316

NORTHERN OHIO SIGN CONTRACTORS ASSOCIATION ET AL., APPELLANTS, *v.*
CITY OF LAKEWOOD, APPELLEE.

DELOREAN CADILLAC, INC. ET AL., APPELLANTS, *v.*
CITY OF LAKEWOOD, APPELLEE.

[Cite as Northern Ohio Sign Contractors Assn. *v.* Lakewood (1987),
32 Ohio St. 3d 316.]

(Nos. 86-962 and -986—Decided September 9, 1987.)

W. James Mayer, Jr., Goldfarb & Reznick, Bernard S. Goldfarb, Morris M. Reznick, Mark V. Webber and Carl E. Cormany, for appellants.

Walter, Haverfield, Buescher & Chockley, Henry B. Fischer, John H. Gibbon, Frederick W. Whatley, William E. Blackie, law director, and Michael E. Murman, for appellee.

MOYER, C.J. The question presented by this appeal is whether constitutional due process or the prohibition of R.C. 713.15 against retroactive zoning ordinances prohibits the retroactive enforcement of a sign ordinance which requires the alteration or removal of previously lawful signs. We must determine whether the ordinance is a reasonable and lawful exercise of the city's police power which is rationally related to a legitimate interest in public health, safety, morals or general welfare.

For the reasons that follow, we hold that Ordinance No. 58-79 is constitutional and affirm the judgment of the court of appeals.

I

It is well-settled that courts will presume the constitutionality of a municipal ordinance and that the party challenging a legislative act of a municipality bears the burden of

demonstrating its unconstitutionality. See *Hudson* v. *Albrecht, Inc.* (1984), 9 Ohio St. 3d 69, 71, 9 OBR 273, 275, 458 N.E. 2d 852, 855, appeal dismissed (1984), 467 U.S 1237; *Dayton* v. *S. S. Kresge Co.* (1926), 114 Ohio St. 624, 629, 151 N.E. 775, 776.

As the constitutional right of the individual to use private property has always been subservient to the public welfare under Section 19, Article I of the Ohio Constitution,[2] such use is subject to the legitimate exercise of local police power pursuant to Sections 3 and 7, Article XVIII of the Ohio Constitution. *Hudson* v. *Albrecht, Inc., supra,* at 72, 9 OBR at 275, 458 N.E. 2d at 855; *Pritz* v. *Messer* (1925), 112 Ohio St. 628, 149 N.E. 30, paragraph one of the syllabus.

A municipal ordinance passed under such authority will be valid if it bears a real and substantial relationship to the health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary. *Hudson* v. *Albrecht, Inc., supra,* at 72, 9 OBR at 275, 458 N.E. 2d at 855; *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, 4 O.O. 2d 113, 146 N.E. 2d 854, paragraph five of the syllabus; *Akron* v. *Chapman* (1953), 160 Ohio St. 382, 52 O.O. 242, 116 N.E. 2d 697, paragraph one of the syllabus.

· The intent of Lakewood's Ordinance No. 58-79, as codified in Section 1329.01 of the codified ordinances of the city, was:

"(a) To promote attractive and maintain high value residential districts * * *;

"* * *

"(d) To control the design of signs so that their appearance will be aesthetically harmonious with their surroundings and an overall urban design for the area;

"(e) To eliminate any conflict between advertising (or identification) signs and traffic control signs which would be hazardous to the safety of the motoring public or pedestrian[s]."

The protection of real estate from impairment and destruction of value and the maintenance of the aesthetics of a community are legitimate governmental interests that may be protected by the reasonable exercise of a municipality's police power where such actions bear a substantial relationship to the general welfare of the public. These interests, therefore, may be properly considered by a legislative body enacting zoning ordinances. *Franchise Developers, Inc.* v. *Cincinnati* (1987), 30 Ohio St. 3d 28, 30 OBR 33, 505 N.E. 2d 966, paragraph two of the syllabus; *Hudson* v. *Albrecht, Inc.,*

---

[2] Section 4, Article VIII of the Ohio Constitution of 1802, stated:

"Private property ought and shall ever be held inviolate, but always subservient to the public welfare, provided a compensation in money be made to the owner."

Section 19, Article I of the Ohio Constitution, retains this language, in pertinent part:

"Private property shall ever be held inviolate, but subservient to the public welfare. * * * [W]here private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money * * *."

The United States Constitution provides for the exercise of state and local police power in derogation of the right to hold private property. The Fifth Amendment states, in pertinent part:

"* * * [N]or shall any person * * * be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

The Fourteenth Amendment states, in pertinent part:

"* * * [N]or shall any State deprive any person of life, liberty, or property, without due process of law * * *."

*supra,* at paragraphs one and two of the syllabus.

## II

Plaintiffs-appellants argue that the Lakewood ordinance, as applied to them, is an unconstitutional deprivation of property without due process of law.

Previous cases before this court have established the rule that neither zoning nor building ordinances may be enforced against preexisting, otherwise lawful, nonconforming structures absent a declaration of nuisance. *Akron* v. *Chapman, supra,* at paragraph two of the syllabus (zoning ordinance); *Gates Co.* v. *Housing Appeals Board* (1967), 10 Ohio St. 2d 48, 39 O.O. 2d 42, 225 N.E. 2d 222 (building ordinance). See, also, *Ghaster Properties, Inc.* v. *Preston* (1964), 176 Ohio St. 425, 27 O.O. 2d 388, 200 N.E. 2d 328, paragraphs two, three and four of the syllabus (general statute regulating billboards); *Sun Oil Co.* v. *Upper Arlington* (1977), 55 Ohio App. 2d 27, 35, 9 O.O. 3d 196, 201, 379 N.E. 2d 266, 271 (zoning ordinance regulating signs). Lakewood argues that the corollary to this rule is that an ordinance may be constitutionally applied to regulate preexisting nonconforming signs which have become a public nuisance. We agree.

The record of testimony and exhibits before the trial court demonstrates the existence of a sign blight which is the functional equivalent of a public nuisance adversely impacting the aesthetics, vitality and value of the city's commercial areas and creating a hazard to vehicular and pedestrian traffic. In addition, subsequent to the decision of the trial court, Lakewood amended Chapter 1329 of its codified ordinances to incorporate a declaration that all existing nonconforming signs constitute a nuisance. Contrary to plaintiffs' assertion that the city must prove that each sign individually represents a nuisance, we recognize that the collective effect of the signs upon the community cannot in all cases be appreciated by consideration of plaintiffs' signs individually. We conclude that the ordinance clearly bears a real and substantial relationship to the safety and general welfare of the public. Plaintiffs have failed to meet their burden of proving otherwise.

Plaintiffs next assert that the sign ordinance is unenforceable, as it contravenes R.C. 713.15 which prohibits retroactive zoning ordinances.[3] The city contends the ordinance constitutes a building code outside the scope of R.C. 713.15. However, it is not the characterization of the sign ordinance that is controlling. The controlling factor is whether the city has the authority to abate nuisances. R.C. 715.44, which authorizes the city to abate nuisances, must therefore be read together with R.C. 713.15.[4]

R.C. 713.15 and 715.44 reflect the

---

[3] R.C. 713.15 provided, at the time relevant herein, in pertinent part:

"The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enacting a zoning ordinance or amendment thereto, may be continued, although such use does not conform with the provisions of such ordinance or amendment, * * *. The legislative authority of a municipal corporation shall provide in any zoning ordinance for the completion, restoration, reconstruction, extension, or substitution of nonconforming uses upon such reasonable terms as are set forth in the zoning ordinance."

[4] R.C. 715.44 provides, in pertinent part:

"A municipal corporation may:

"(A) Abate any nuisance and prosecute in any court of competent jurisdic-

balancing of private and public interests in private property as defined in Section 19, Article I of the Ohio Constitution.[5] In view of our previous analysis of these interests, we hold that R.C. 713.15 does not prevent a city from taking legislative action pursuant to its police power to abate a preexisting use which has become a nuisance. See, also, *C. D. S., Inc.* v. *Gates Mills* (1986), 26 Ohio St. 3d 166, 26 OBR 142, 497 N.E. 2d 295.

Finally, plaintiffs contend that the inclusion of a provision in the ordinance that designates a period of time within which nonconforming signs must be altered or removed, which is referred to as an amortization provision, is unconstitutional and contrary to law. Effective July 16, 1979, Subsection 1329.15(b)(7) of the ordinance required that all signs " * * * rendered nonconforming by the provisions of this chapter and permitted to continue shall be removed, altered or remodeled to conform to the provisions of this chapter no later than January 1, 1985."

Plaintiffs' reliance on *Akron* v. *Chapman, supra; Aristo-Craft, Inc.* v. *Evendale* (App. 1974), 69 O.O. 2d 118, 322 N.E. 2d 309; and *Gillette* v. *Washington Twp. Zoning Comm.* (Mar. 26, 1985), Montgomery App. No. 9039, unreported, is misplaced. In each of those cases, the cities sought to discontinue lawful, preexisting nonconforming uses within an amortization period. However, the cities neither demonstrated the existence of a danger to the public health, safety, morals or public welfare, nor made a legislative finding or declaration of nuisance sufficient to support the exercise of the police power. Rather, in the absence of such evidence or finding, they sought to use an amortization provision to eliminate lawful preexisting uses. Standing alone, such a provision is unconstitutional as it constitutes the taking of property without due process of law and is an unreasonable exercise of the police power. By contrast, when included as part of a valid exercise of municipal police power to abate a nuisance, an amortization clause becomes an element to consider in evaluating whether the ordinance is unreasonable or arbitrary. We find the amortization provision of the ordinance before us, allowing five and one-half years before mandatory compliance, is neither arbitrary nor unreasonable, particularly in view of the ordinance's further provision for hardship variances.[6]

Given the presumption of constitutionality and upon the record before us, we find plaintiffs have failed to carry their burden of showing the ordinance is unconstitutional, unreasonable or arbitrary, and we find the ordinance to be a valid exercise of muni-

---

tion, any person who creates, continues, contributes to, or suffers such nuisance to exist;
"* * *

"(C) Prevent injury and annoyance from any nuisance; * * *."

[5] See footnote 2, *supra*.

[6] Pursuant to Ordinance No. 58-79, Section 1329.16 of the Codified Ordinances of the city of Lakewood provides, in pertinent part:

"A variance from the strict application of the provisions of this chapter may be granted by the Board of Building Standards in regard to an existing nonconforming sign * * * if the Board finds that requiring strict compliance with the provisions of this chapter may impose an undue hardship and that the granting of the variance from the provisions of this chapter will not depreciate or damage neighboring property, will not create a safety hazard and will not be contrary to the purposes of this chapter. * * *"

cipal police power to protect the safety and general welfare of the public from a nuisance. The trial court did not err in finding the sign blight adversely impacts the aesthetics, value and vitality of Lakewood's commerical areas and presents a hazard to vehicular and pedestrian traffic.

We emphasize that retroactive zoning ordinances founded upon arbitrary, unsupported legislative declarations of nuisance, or comprised of arbitrary, discriminatory, capricious, or unreasonable terms, remain without real and substantial relation to legitimate governmental objectives. Ordinance No. 58-79 is not such an ordinance.

Accordingly, we hold that the municipal police power under which Lakewood adopted Ordinance No. 58-79 includes the authority to regulate preexisting nonconforming signs that have become a public nuisance. The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

HOLMES, DOUGLAS and H. BROWN, JJ., concur.

MAHONEY, GEORGE and WRIGHT, JJ., dissent.

MAHONEY, J., of the Ninth Appellate District, sitting for SWEENEY, J.

GEORGE, J., of the Ninth Appellate District, sitting for LOCHER, J.

GEORGE, J., dissenting. It cannot be disputed that a municipality, in the exercise of its police power, may regulate the use of private property, so long as the regulation bears a substantial relationship to health, safety, morals or the general welfare and is not unreasonable or arbitrary. *Hudson v. Albrecht, Inc.* (1984), 9 Ohio St. 3d 69, 9 OBR 273, 458 N.E. 2d 852, appeal dismissed (1984), 467 U.S. 1237. Furthermore, the scope of a city's police power is not fixed but is necessarily expandable to meet the needs of an increasingly complex society. *State* v. *Buckley* (1968), 16 Ohio St. 2d 128, 45 O.O. 2d 469, 243 N.E. 2d 66. So today, it is well accepted that a city's interest in its appearance is a substantial governmental goal which justifies the regulation of signs. *Metromedia, Inc.* v. *San Diego* (1981), 453 U.S. 490, 507-508; *Members of City Council of Los Angeles* v. *Taxpayers for Vincent* (1984), 466 U.S. 789, 807; *Hudson, supra.*

Consequently, it must be conceded that Lakewood, faced with deteriorating property values that its experts relate to an overabundance of unattractive signs, can seek to remedy this situation by enacting legislation regulating these signs. But when the city attempts to enforce new regulations against signs which existed lawfully prior to the enactment of the ordinance, a problem arises. A person has a constitutional right to continue to use his property in a lawful manner, unless his use of that property constitutes a nuisance. *Akron* v. *Chapman* (1953), 160 Ohio St. 382, 52 O.O. 242, 116 N.E. 2d 697.

The public welfare criterion required to establish nuisance, which would enable the city to enforce a sign regulation retroactively, is necessarily greater than that required to trigger a city's police power for prospective regulation. A declaration of nuisance forces the owner to spend money to remove offending signs and erect new ones; prospective regulation only restricts the owner's options when he decides to erect new signs.

The city council did declare the

nonconforming signs to be a nuisance. The amendment was not adopted, however, until six months after the trial court had ruled on the constitutionality of the ordinance and six years after the regulations were first passed. Whether the amendment was in the record of the appellate court, or whether it is now before this court, is not clear.

In any event, whether this was legislatively or judicially declared a nuisance is immaterial. The fact remains that the situation described here falls short of being a nuisance.

Although definitions of the term *nuisance* vary, it is a legal term of art used to describe acts or omissions that endanger life or health, give offense to the senses, or obstruct reasonable and comfortable use of property. See, generally, 72 Ohio Jurisprudence 3d (1987) 377, Nuisances, Section 1. Signs, which have been declared offensive to the senses, and which tend to depress property values, may properly be classified as blight without rising to the status of nuisance. There must be a nexus between the threat of danger to the health, safety, morals or general welfare of the residents and the offensive signs. Looking at council's actions we can sense its dilemma. It declared the signs to be a nuisance, but at the same time provided a hardship exception, intended to limit application of the ordinance, and endorsed a policy of some monetary compensation, all of which are more compatible with the concept of an unconstitutional taking.

Council provided a time frame within which the *nuisance* was to be remedied—five and one-half years. Amortization clauses attached to regulation enforcement are generally permissible. However, when such a clause is used in conjunction with a hardship exception, a compelling question arises. See, generally, for hard-

ship cases, *Ghaster Properties, Inc.* v. *Preston* (1964), 176 Ohio St. 425, 27 O.O. 2d 388, 200 N.E. 2d 328, and its progeny. Does a nuisance exist? The hardship exception provides that a sign owner may obtain a variance, allowing him to maintain his *nuisance* upon showing that he would suffer an undue hardship if he was forced to comply. Since nuisances by their nature are to be abated, allowing a variance is not consistent with the notion of nuisance.

Another telling factor is reflected in the words of the ordinance itself. Its *intent* reflects limited application. Signs which advertise "any product, service, event, person, institution, or business located on the premise[s] where the sign is located" are not intended to be regulated. This statement takes on significance as a factor when the city has pronounced an intent to abate the declared sign-blight nuisance.

Finally, Lakewood's commercial revitalization program, through the Community Development Corporation of Lakewood, provides for a $500 payment to assist affected sign owners in the design of replacement signs required under the new regulations. While the offer to assist owners in meeting the cost of this undertaking is commendable, such payments sound in the nature of compensation for a taking of a property right. A city's commercial revitalization program should not compensate for damages for nuisance abatement. These payments suggest council recognized its action was not nuisance abatement.

Considering these factors together — the city council's late declaration of a nuisance, the grant of a hardship variance, the intent to limit regulation of similarly situated signs and the approval of payment of some compensation—compels the conclusion that,

while the signs are offensive, they are something less than a nuisance.

The fact is that Lakewood can resolve to clean up its *blighted* areas by setting up standards for future signs. But if it wants to eliminate the signs it finds offensive that are already there, it must either declare them to be a nuisance without equivocating or compensate their owners. The ordinance which the majority has approved authorizes an unconstitutional taking under the guise of nuisance.

MAHONEY and WRIGHT, JJ., concur in the foregoing dissenting opinion.