Michael Skilwies appeals from a judgment of the Montgomery County District Court, Area Two, finding him in violation of Riverside Zoning Ordinance Section 1173.25. That section prohibited the parking of certain commercial vehicles and heavy equipment on driveways, yards, or streets in Skilwies' residential neighborhood. Skilwies argues that the application of the newly revised zoning ordinance to his preexisting use was impermissibly retroactive. We agree. Because the ordinance was primarily aimed at accomplishing aesthetic ends and was not substantially related to the abatement of an actual nuisance, we hold that it cannot be enforced against prior, legal nonconforming uses. Because Skilwies established that his prior use was a legal nonconforming use, we reverse the judgment of the trial court.
 I.
The facts of this action are not in dispute and were submitted to this court by the parties pursuant to App.R. 9(D). Appellant, Michael Skilwies, is the owner of real property located at 4343 Schwinn Drive, Riverside, Ohio. His property is zoned RE-1, residential estate, under the City of Riverside Zoning Ordinance. Sometime prior to June, 1997, Skilwies began parking a one-ton rated capacity dumptruck on his four-acre lot. The dumptruck bears commercial license plates.
On June 19, 1997, the City of Riverside passed Ordinance No. 97-0-102. In that ordinance, the Riverside City Council announced certain legislative findings it had made based on the recommendations of the Planning Commission. The council found that "unrestricted parking of commercial vehicles and heavy equipment in residential areas" "causes or tends to cause substantial diminution in the value of other residential property," "causes increased air pollution and excessive noise," "is detrimental to the safety of children and other pedestrians," and is generally "detrimental to the public health safety and general welfare of the inhabitants of the City of Riverside." Consequently, the city council declared that "unrestricted parking of commercial vehicles and heavy equipment in residential areas" is a public nuisance.
Pursuant to these findings, the council enacted Section 1173.25 of the Riverside Zoning Ordinance. That section provides, in relevant part, as follows:
 (a) No person shall cause or permit to stand, park or permit to be parked, any commercial vehicle or heavy equipment in or upon any driveway, front yard, side yard or rear yard, nor shall any commercial vehicle or heavy equipment be permitted to stand or park in or upon any public street or alley.
 (b) Subsection (a) hereof shall apply to any residential use district classed as "RE-1" * * *.
 (c) The foregoing prohibition shall not apply to a temporary purpose incidental to performing maintenance or repair services at or upon the premises or otherwise during the time reasonably necessary for loading or discharging property or passengers * * *.
 (d) For the purposes of the foregoing provisions 'commercial vehicles' are hereby defined as:
* * *
 (2) Motor vehicles, one ton or over rated capacity, bearing commercial motor vehicle license plates.
* * *
 (g) Whoever violates Section 1173.25 of the Zoning Ordinance shall be fined not more than One Hundred Dollars ($100.00) for a first offense and for each subsequent offense shall be fined not more than Two Hundred Fifty Dollars ($250.00) or imprisoned not more than thirty (30) days or both.
According to the terms of this section, Skilwies' use of his property as a place to park his dumptruck constituted a zoning violation.
A complaint was filed against Skilwies by the City of Riverside on September 18, 1997, alleging that he was in violation of Section 1173.25 of the zoning ordinance. Skilwies moved to dismiss the charge on the grounds that he had established a prior non-conforming use and the zoning regulation as applied to him was impermissibly retroactive. On January 29, 1998, Skilwies' motion to dismiss was overruled, and he was found guilty of the violation. He was fined $12.00 plus additional costs and fees of $62.70, for a total of $74.70. Skilwies appeals from that judgment.
Skilwies raises two assignments of error on appeal. They are as follows:
Assignment of Error #1
 The citation of Appellant for a violation of newly enacted Riverside Zoning Ordinance Section 1173.25 violates Ohio Revised Code 713.15 because it retroactively applies a new zoning ordinance to a previously lawful use of Appellant's property.
Assignment of Error #2
 The citation of Appellant for a violation of the provisions contained in Riverside Ordinance No. 97-0-102 violates the Ohio and United States Constitution because the citation is retroactively applied and because the ordinance purports to regulate the parking of motor vehicles, an unconstitutional and improper subject of a municipality's authority to enact zoning prohibitions on the use of land.
These assignments of error implicate two different levels of constitutional analysis. A different standard of review applies depending on whether the question is the constitutionality of the ordinance as a restriction of property rights or its constitutionality as a retroactive application to a pre-existing land use.
 II.
As to the first question, it has long been settled that a municipal zoning ordinance will be upheld as constitutional unless it is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Euclid v. Ambler Realty Co. (1926),272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303; see alsoConsolidated Mgt., Inc. v. Cleveland (1983), 6 Ohio St.3d 238,242. The enactment of zoning laws by a municipality is an exercise of the "police power" granted to municipalities by Section 3, Article XVIII of the Ohio Constitution. Garcia v.Siffrin Residential Assn. (1980), 63 Ohio St.2d 259, paragraph two of the syllabus. Thus, any given zoning law will survive constitutional scrutiny if it is rationally related to a legitimate government purpose and it does not violate either the general law of Ohio, see id. at 270, or some other specific constitutional protection, see, e.g., Dolan v. Tigard (1994),512 U.S. 374, 391, 114 S.Ct. 2309, 2319, 129 L.Ed.2d 304
(holding that dedication of land to the public or the government as a prerequisite for development must bear a rough proportionality to the impact of the development or else it violates the Takings Clause of the Fifth Amendment).
The parties disagree about the effect and aims of the zoning law in question. Skilwies asserts that the ordinance is primarily aesthetic in its aims. The city counters that the law promotes public health and safety, in addition to remedying certain aesthetic concerns. In regard to the constitutionality of the prospective exercise of the city's police power, however, this distinction does not significantly affect our analysis. The Supreme Court of Ohio has held that "there is a legitimate governmental interest in maintaining the aesthetics of the community and, as such, aesthetic considerations may be taken into account by the legislative body in enacting zoning legislation." Franchise Developers, Inc. v. Cincinnati (1987),30 Ohio St.3d 28, paragraph two of the syllabus. Given the strong presumption that any zoning law serves a legitimate government purpose, see id. at 32, we cannot seriously doubt the constitutionality of this ordinance when it is applied prospectively.
Nevertheless, Skilwies argues that Section 1173.25 of the Riverside Zoning Ordinance was an improper attempt to regulate the use of motor vehicles through zoning, instead of regulating land use. Skilwies relies on Rootstown Twp. v. Shrimp (1988),47 Ohio App.3d 141, in which the Court of Appeals for Portage County held a particular zoning law unconstitutional, in part, because the power to zone did not include the power to regulate motor vehicles. Id. at 144-45. Rootstown is distinguishable for at least two reasons, however. First, Rootstown involved the zoning powers of a township rather than those of a municipality. A township only has the powers and privileges delegated to it by statute. 20 Ohio Jurisprudence 3d (1980) 287, Counties, Townships and Municipal Corporations, Section 324. In contrast, a municipality has general police powers by virtue of the home-rule provisions of the Ohio Constitution. See Sections 3 and 7, Article XVIII, Ohio Constitution. Thus, although Rootstown Township may have exceeded its powers by regulating motor vehicles, the City of Riverside could not. Second, Rootstown Township attempted to regulate certain vehicles, including those on public roads, by declaring them to be "junkyards." 47 Ohio App.3d at 143. The court of appeals found that attempt was unreasonable and in excess of the townships authority. Id. at 145. Here, the issue is Skilwies' use of his land as a place to park his dumptruck. We conclude that, to the extent that the ordinance is at issue in this case, the question is one of a land-use regulation and, therefore, can properly be regulated through zoning.
 III.
Although a land-use regulation may be constitutional when applied to uses that arise after its enactment, the same regulation may be unconstitutional when applied retroactively to pre-existing uses. A different standard of review applies to the retrospective exercise of municipal power. There has sometimes been an unfortunate tendency by litigants and by reviewing courts to merge this different inquiry into the rational-basis analysis that applies to prospective applications of police power. See, e.g., Rocky River v. Colah
(Sept. 21, 1995), Cuyahoga App. Nos. 68127, 68128, unreported, at 2 (holding that a municipal ordinance regulating the parking of commercial vehicles on private land could be applied retrospectively because the ordinance had "a real and substantial relationship to the public health, safety or general welfare, and [wa]s not unreasonable or arbitrary.").
In Akron v. Chapman (1953), 160 Ohio St. 382, paragraph two of the syllabus, it was held that: "[t]he right to continue to use one's property in a lawful business and in a manner which does not constitute a nuisance and which was lawful at the time such business was established is within the protection of Section 1, Article XIV, Amendments, United States Constitution, and Section 16, Article I of the Ohio Constitution, providing that no person shall be deprived of life, liberty or property without due process of law." This constitutional protection for property rights applies to all legislative acts, including zoning ordinances. See Gates Co. v. Housing Appeals Bd. (1967),10 Ohio St.2d 48, 51 (building ordinance); Chapman,160 Ohio St. at 382 (zoning ordinance).
With regard to municipal zoning powers, moreover, this constitutional principle has been codified in R.C. 713.15. That statute provides, in relevant part:
 The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enacting a zoning ordinance or an amendment to the ordinance, may be continued, although such use does not conform with the provisions of such ordinance or amendment * * *.
R.C. 713.15 has been held to be a general law that confers rights to non-conforming users rather than restricting municipal home-rule powers. Sun Oil Co. of Pennsylvania v.Upper Arlington, (1977), 55 Ohio App.2d 27, 36. Thus, municipal zoning laws that violate R.C. 713.15 may also violate ArticleVIII, Section 3 of the Ohio Constitution. To the extent that zoning laws fail to provide for nonconforming uses, they are preempted by the legislative authority embodied in R.C. 713.15.Id.
 A. Establishing a Lawful Use
The city notes that R.C. 713.15 requires that a use be "lawful" as a condition of continuing nonconformity.Pschesang v. Village of Terrace Park (1983), 5 Ohio St.3d 47, syllabus. The city also notes that Skilwies had the burden, under R.C. 713.15, of showing that his prior use was lawful, citing Petti v. Richmond Heights (1983), 5 Ohio St.3d 129, 131. Thus, as an alternative ground for affirmance, the city asserts that Skilwies failed to prove the lawfulness of his land use prior to the enactment of Section 1173.25. Although the city recognizes that Skilwies could not have violated Section 1173.25 before the statute took effect, it claims that he failed to prove his conformity with other sections of the Riverside Zoning Ordinance that were in effect at the time he began to park his truck on the property. In particular, the city cites Riverside Zoning Ordinance Sections 1177.01 and 1177.07(c).
We conclude, however, that the city has waived this argument for the purposes of this appeal. It is axiomatic that an appellate court will not consider legal arguments raised on appeal for the first time. Mark v. Mellott Mfg. Co., Inc.
(1995), 106 Ohio App.3d 571, 589. There is no indication in the record that the city ever raised the question of whether Skilwies' dumptruck was parked in violation of zoning laws other than Section 1173.25. Thus, we must conclude that the city waived this argument by failing to raise it in the trial court.
Although we recognize that Skilwies had the burden of proving the prior lawfulness of his land use, see Petti,5 Ohio St.3d at 131, we find that he met that burden by introducing into the record the municipal ordinance that enacted Section 1173.25. That ordinance evidently made illegal certain land uses that had been legal before its enactment, including the parking in residential zones of commercial vehicles with a one-ton rated capacity. With regard to any other sections of the zoning ordinance, we conclude that the city was required to put them at issue before Skilwies would be forced to show his compliance with them.
Were we to conclude otherwise, landowners trying to establish a nonconforming use under R.C. 713.15 would bear an almost insurmountable burden at trial. The landowner would have to pore through all sections of the zoning ordinance — and presumably all other municipal ordinances, all sections of the Ohio Revised Code and the federal code, and all state and federal regulations — trying to find which sections might be relevant to his particular land use. Then, he would have to put on evidence showing that his use was lawful with regard to each such section. If he failed to anticipate the relevance of any particular section, the municipality could then argue on appeal that the landowner failed to prove his compliance with that section — as the city has in this case. Even if the landowner were in compliance with the statutes cited on appeal, he could not introduce further evidence of that compliance. Consequently, unless we recognize that the rule of waiver overcomes the landowner's burden of proving the legality of his land use, we would force the landowner to "prove a negative" at trial. Unless he could show that he did not violate every relevant law at the time he initiated his use, on appeal he would face a potential ambush by citation to heretofore unmentioned statutes. Imposition upon any litigant of such an unmanageable burden is fundamentally unfair. See Hurt v. LiquorControl Comm. (Nov. 26, 1997), Montgomery App. No. 16232, unreported, at 14-15; see also Dublin v. Finkes (1992), 83 Ohio App.3d 687,690 (rejecting a lawful-use argument raised for the first time on appeal).
The Ohio Supreme Court's opinion in Petti v. Richmond, cited by the appellee, does not lead us to a different conclusion. InPetti, the landowner failed to provide any evidence showing that his use was legal when it commenced. See Petti, 5 Ohio St. 3
d at 131. Here, Skilwies showed that Riverside was enacting a new section of its zoning ordinance and amending certain others. None of the sections that were amended prohibited the use in question. We find that this was sufficient evidence to meet the landowner's burden, recognized in Petti, of showing that a nonconforming use was lawful when it began.
Furthermore, even if we did not consider the city's lawful-use argument waived, we would find that the sections of the zoning ordinance cited by the city are not relevant to the land use in question. Section 1177.01, cited by the city, requires landowners to provide off-street parking spaces. The record indicates that Mr. Skilwies had both a driveway and a garage on his property. Thus, he does not appear to have violated this section. Moreover, this section does not prohibit the parking of trucks on land, which is the use at issue in this case. Section 1177.07(c), cited by the city, prohibits the storage of trucks on off-street parking facilities. Skilwies' truck, however, was parked in his rear yard, not on any off-street parking facility. Section 1177.07(e), which prohibits the parking of any vehicles in front or side yards, does not extend the same prohibition to parking in rear yards. Thus, we do not find in these statutes any indication that Skilwies' land use was illegal prior to the enactment of Section 1173.25.
For these reasons, we conclude that Skilwies' use of his land as a place to park his dumptruck was a lawful use when it began, in accordance with R.C. 713.15
 B. Regulating a Nuisance
Skilwies argues that, because the City of Riverside enacted Section 1173.25 as part of its zoning ordinance, he is entitled to continue his nonconforming use by the plain terms of R.C.713.15. In the past, this plain-language interpretation of R.C.713.15 appealed to some reviewing courts. See, e.g., Sun OilCo. of Pennsylvania v. Upper Arlington (1977), 55 Ohio App.2d 27,37. The Ohio Supreme Court, however, has ruled that the substance of a particular legislative enactment, rather than how the municipality has chosen to codify it, dictates whether R.C. 713.15 will apply. See Northern Ohio Sign ContractorsAssn. v. Lakewood (1987), 32 Ohio St.3d 316, 319. In NorthernOhio Sign Contractors, the Supreme Court held that R.C. 713.15
had to be read in pari materia with R.C. 715.44, which recognizes municipal power to abate nuisances. Id. at 319-20. Thus, for the purposes of R.C. 713.15, a zoning ordinance is not a 'zoning ordinance' when it seeks to abate a preexisting use that is a public nuisance. See id. at 320. When it abates a nuisance, a municipality may legislate retrospectively without regard to the restrictions of R.C. 713.15. Id.
When it enacted Section 1173.25, the City of Riverside announced its legislative finding that the unrestricted parking of commercial vehicles and heavy equipment in residential districts is a public nuisance. We are faced, therefore, with the question of how much deference to give to this legislative finding. In Northern Ohio Sign Contractors, the Supreme Court of Ohio indicated that courts should give considerable deference to such legislative findings. See id. at 320. The Court reasoned that there is a strong presumption that any legislative action is constitutional, and that principle extends to retrospective land regulations that might affect vested rights. Id. Nevertheless, the Court recognized that "arbitrary, unsupported legislative declarations of nuisance" could not support retrospective application of zoning ordinances. Id. at 321.
Even recognizing that deference is due to a legislative finding of nuisance, there remains an important distinction between the rational-basis analysis applied to prospective zoning laws and the analysis of whether a nuisance is being abated so as to permit retrospective land regulation. A nuisance is a legal concept with a particular meaning. InGates Co. v. Housing Appeals Board (1967), 10 Ohio St.2d 48,52, the Supreme Court equated it with a "factual determination that the continued use immediately and directly imperils the public health, safety or morals." The vast majority of land uses that could be properly regulated under a zoning ordinance do not rise to the level of nuisance, and no legislative finding could make them do so. In exercising the power of judicial review, no amount of deference to a legislative finding should force a court to concede that something is that which it is not. See Marathon Oil Co. v. Bd. of ZoningAdjustment (1975), 44 Ohio App.2d 402, 408-409 (finding that a municipal ordinance declaring abandoned service stations a public nuisance was arbitrary and unconstitutional).
Furthermore, it should be remembered that the constitutional protections of due process and the protections codified in R.C.713.15 are supposed to guard against governmental overreaching. If these protections could be overcome by a perfunctory declaration that a nuisance exists, they would be reduced to the status of mere procedural hurdles. Any municipality could reach nonconforming uses as long as it recited the necessary language. Too deferential an analysis of a nuisance finding would vitiate the long-established constitutional and statutory protection of vested property rights. See Marathon Oil, 44 Ohio App. 2
d at 408 ("The courts have frequently protected property rights against arbitrary municipal legislative interference.")
After due consideration, we are unable to agree with the City of Riverside's finding that the parking of commercial vehicles and heavy equipment in residential areas constitutes a public nuisance. Parked vehicles do not generally, as the city's declaration maintains, cause increased air pollution and excessive noise. Similarly, these vehicles, when parked on residential property, do not seriously endanger children and other pedestrians. Operation of commercial vehicles might increase these dangers, but the city has chosen to regulate the parking of these vehicles, not their operation. We do not think that the zoning law in question bears a substantial enough relationship to an actual nuisance to permit the law's retrospective application against a preexisting use.
In the prospective exercise of its police power, a legislative action need only have a rational relationship to a legitimate government purpose to survive constitutional scrutiny. Toledo v. Wacenske (1994), 95 Ohio App.3d 282, 288. Moreover, a legislative body need not correct a given evil all at once, but may proceed in a step-by-step fashion. Hilton v.Toledo (1980), 62 Ohio St.2d 394, 398. We recognize that Section 1173.25 of the Riverside Zoning Ordinance bears some rational relationship to the reduction of smog and noise and to the increase of traffic safety. A prohibition on parking would almost certainly diminish operation of large vehicles in the residential area and might well be considered a first step toward these ends. Nevertheless, when legislation is directed retrospectively against existing property uses, a more stringent form of review must apply. Some rational relationship can almost always be contrived to connect the elimination of a nonconforming use and some public goal that might be called abatement of a nuisance. If this were the standard of review, the protections conferred upon vested property rights would be drained of all real meaning. We hold, therefore, that some substantial nexus must exist between the abatement of a public nuisance and any retrospectively applied zoning ordinance.
A vicious dog, for example, might constitute a public nuisance. A zoning ordinance that prohibited the keeping of all dogs in residential areas, however, would be overbroad with respect to the goal of protecting the public from vicious dogs. No substantial nexus would exist. As a consequence, that ordinance would likely be unconstitutional if it applied to landowners who already kept dogs on their property, as an impermissible interference with their vested rights. Similarly, an ordinance that prohibited the use of outdoor dog houses might have some rational relationship to the reduction of danger from vicious dogs. Nevertheless, the relationship between the regulation and the actual nuisance is so attenuated that it would likely raise the same constitutional concerns with regard to retrospective application. A regulation directed at a breed with a reputation for viciousness, on the other hand, would bear a substantial relationship to the abatement of a public nuisance and would not violate the constitutional protection of vested property rights. Cf. Akron v. Tipton
(1989), 53 Ohio Misc.2d 18, 20 (upholding a city pit-bull ordinance).
We are unable to see a substantial nexus between the prohibition against parking commercial vehicles under Section 1173.25 and the abatement of an actual nuisance related to smog, or noise, or public safety. Even given the presumption in favor of a statute's constitutionality, we cannot reasonably justify retrospective application of this section by referencing the municipal power to abate nuisances.
We have not yet addressed the Riverside council's finding that unrestricted parking of commercial vehicles "causes or tends to cause substantial diminution in the value of other residential property." There is no other way to characterize this concern other than as a concern for the aesthetics of residential neighborhoods. Whatever aesthetic concerns outdoor parking of large vehicles might raise, these do not, we conclude, rise to the level of a public nuisance.
Faced with similar issues, the Franklin County Court of Appeals has held that ordinances whose primary purpose is aesthetic improvement, rather than remediation of a direct threat to the public safety or health, cannot be said to abate a nuisance. Dublin v. Finkes (1992), 83 Ohio App.3d 687, 691. We tend to agree with this holding as a rule of thumb. Before adopting such a rule, however, we would qualify it by recognizing that some land uses might so aesthetically repugnant that they could rise to the level of a nuisance. See,e.g., Grove City v. Weethee (1991), 71 Ohio App.3d 405, 408
(holding that an unenclosed junkyard could be retrospectively regulated as a nuisance). Such uses must necessarily constitute a narrow exception to the rule outlined in Finkes. In any event, parked commercial vehicles, as a class, are not so visually repugnant that they can seriously be called nuisances.
Therefore, because Riverside Zoning Ordinance Section 1173.25 primarily addresses aesthetic concerns that do not rise to the level of a public nuisance, and because that section bears no substantial relationship to the abatement of a public nuisance, it is subject to the restrictions on retrospective application embodied in R.C. 713.15, and to the due process requirements of Section 16, Article I, of the Ohio Constitution and theFourteenth Amendment of the United States Constitution.
 IV.
Having found that appellant, Michael Skilwies, established a lawful use prior to the enactment of Section 1173.25 of the Riverside Zoning Ordinance, and having held that section did not abate a public nuisance, we conclude that the ordinance was unconstitutional as applied to Skilwies' nonconforming use. Appellant's two assignments of error are sustained. The judgment of the Montgomery County District Court finding appellant guilty of a zoning violation is reversed.
Judgment reversed.
WOLFF, J., and FAIN, J., concur.
Copies mailed to:
Philip B. Herron Kellie A. Kalbac Kevin T. McDougall Thomas J. Replogle Hon. James A. Hensley, Jr.