JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant, Capital Properties Management, Ltd. ("Capital"), appeals the judgment of the Cuyahoga County Court of Common Pleas affirming the decision of the City of Cleveland's Board of Building Standards and Building Appeals and the Ohio Board of Building Appeals, finding that Capital violated Cleveland's housing ordinances. Finding no merit to the appeal, we affirm.
 {¶ 2} In September 1999, Capital was cited by the City of Cleveland (the "City") regarding its property at 12931 Shaker Boulevard (the "Shaker House Apartments") for violations of the City's housing ordinances ("City Building Code"). The notice of violation required Capital to install a top-of-car operating device on both elevators inside the Shaker House Apartments.[1]
 {¶ 3} The City of Cleveland's Board of Building Standards and Building Appeals, the Ohio Board of Building Appeals, and the Cuyahoga County Court of Common Pleas upheld the notice of violation.
 {¶ 4} In its sole assignment of error, Capital argues that the trial court erred when it affirmed the decision of the Ohio Board of Building Appeals.
 {¶ 5} Capital brings the within appeal pursuant to R.C. Chapter 2506. The applicable standard of review is set forth in R.C. 2506.04, which provides in pertinent part:
{¶ 6} "The court may find that the order, adjudication, ordecision is unconstitutional, illegal, arbitrary, capricious,unreasonable, or unsupported by the preponderance of substantial,reliable, and probative evidence on the whole record. Consistentwith its findings, the court may affirm, reverse, vacate, ormodify the order, adjudication, or decision * * *. The judgmentof the court may be appealed by any party on questions of law asprovided in the Rules of Appellate Procedure and, to the extentnot in conflict with those rules, Chapter 2505 of the RevisedCode."
 {¶ 7} In Henley v. Bd. of Zoning Appeals,90 Ohio St.3d 142, 147, 2000-Ohio-493, 735 N.E.2d 433, the Ohio Supreme Court construed the above language and explained:
{¶ 8} "We have distinguished the standard of review to beapplied by common pleas courts and courts of appeals in R.C.Chapter 2506 administrative appeals. The common pleas courtconsiders the `whole record,' including any new or additionalevidence admitted under R.C. 2506.03, and determines whether theadministrative order is unconstitutional, illegal, arbitrary,capricious, unreasonable, or unsupported by the preponderance ofsubstantial, reliable, and probative evidence. See Smith v.Granville Twp. Bd. of Trustees (1998), 81 Ohio St.3d 608, 612,1998 Ohio 340, 693 N.E.2d 219, * * *, citing Dudukovich v.Lorain Metro. Hous. Auth. (1979), 58 Ohio St.2d 202, 206-207,389 N.E.2d 1113, * * *.
 {¶ 9} Our standard of review to be applied in an R.C. 2506.04appeal is `more limited in scope.' Kisil v. Sandusky (1984),12 Ohio St.3d 30, 34, 12 Ohio B. 26, 465 N.E.2d 848. `This statutegrants a more limited power to the court of appeals to review thejudgment of the common pleas court only on `questions of law,'which does not include the same extensive power to weigh `thepreponderance of substantial, reliable and probative evidence,'asis granted to the common pleas court. `Id. at fn. 4. `It isincumbent on the trial court to examine the evidence. Such is notthe charge of the appellate court. * * * The fact that the courtof appeals * * * might have arrived at a different conclusionthan the administrative agency is immaterial. Appellate courtsmust not substitute their judgment for those of an administrativeagency or a trial court absent the approved criteria for doingso.' Lorain City School Dist. Bd. of Edn. v. State Emp.Relations Bd. (1988), 40 Ohio St.3d 257, 261,533 N.E.2d 264." Id. at 147.
 {¶ 10} It is with this limited scope of review that we address Capital's assignment of error.
 {¶ 11} Capital argues that no statute, regulation, or ordinance exists which would mandate the installation of top-of-car controls on existing elevators. We disagree.
 {¶ 12} This court recently decided this issue in an analogous case, Shaker North, Ltd. v. City of Cleveland (Nov. 29, 2001), Cuyahoga App. Nos. 78244-78246. In Shaker North, this court determined that top-of-car controls were mandated under the Cleveland Building Code by virtue of the Ohio Basic Building Code, the Ohio Elevator Code, and the Ohio Administrative Code ("OAC") adopting the standards set forth in the American Society of Mechanical Engineers Safety Code for Existing Elevators and Escalators ("ASME Code"). Id.
 {¶ 13} Capital contends that the Ohio Elevator Code does not require compliance with the ASME Code. Instead, it claims that complying with the ASME Code is merely "prima facie evidence of conformity with ASME standards." However, Capital ignores OAC 3001.1 (4101:2-30-1), which provides:
{¶ 14} "* * * the provisions of this chapter shall control thedesign, construction, installation, maintenance and operation ofall elevators * * * hereafter operated, installed, relocated oraltered in all buildings and structures."OAC 3001.1(4101:2-30-1).
 {¶ 15} The subsequent provisions of this chapter, OAC 3001.2 (4101:2-30-1), set forth the referenced standards to be applied as "elevator code listed in `Chapter 35, Referenced Standards.'" ASME 17.3 Section 1.2 provides that "existing installations, at a minimum, shall meet the requirements of this Code. If an existing installation does not meet the requirements * * * it shall be upgraded." Section 3.10 requires top-of-car operating devices.
 {¶ 16} As this court previously determined in Shaker North,
and we reaffirm, Chapter 35 indicates that ASME 17.3 is the governing standard for existing elevators. Shaker North, supra. Therefore, because compliance is mandated under the Ohio Administrative Code, specifically the Ohio Elevator Code, compliance is required under the Cleveland Building Code.
 {¶ 17} Capital claims that, even assuming arguendo, top-of-car controls are mandated under law, the Cleveland Codified Ordinances ("C.C.O.") and the Ohio Revised Code would exempt its elevators from such requirement.
 {¶ 18} C.C.O. 3111.02 provides:
{¶ 19} "The Ohio Basic Building Code as adopted herein appliesto all buildings except as follows: * * * (3) Existing buildingswhere their location, parts, equipment and other items do notconstitute a serious hazard * * *."
 {¶ 20} A "serious hazard" is defined as:
{¶ 21} "A hazard of considerable consequence to safety orhealth through the design, location, construction, or equipmentof a building, or the condition thereof, which hazard has beenestablished through experience to be of certain or probableconsequence, or which can be determined to be, or which isobviously such a hazard."OAC 4101:1-2-02.
 {¶ 22} While Capital contends that its elevators have not caused any injury because of the lack of top-of-car controls, we find that the condition of the elevators without the controls represents a serious hazard to the safety of the inspectors. The City suggests instances when the inspectors, while on top of the elevators, could be thrown or crushed without such controls. We find this reasoning alone sufficiently compelling to declare that elevators without top-of-car controls are a serious hazard.
 {¶ 23} Even if the Ohio Basic Building Code did not apply, the Ohio Elevator Code is still applicable. R.C. 4105.13 provides the following exemption to the elevator code:
{¶ 24} "Every elevator shall be * * * maintained * * * inaccordance with state laws and rules as are authorized in respectthereto. Where reasonable safety is obtained without complying tothe literal requirements of such rules as in cases of practicaldifficulty or unnecessary hardship, the literal requirements ofsuch rules shall not be required."
 {¶ 25} Capital does not argue that the installation of top-of-car controls cannot be complied with literally. However, it contends that installation would cause unnecessary hardship, and thus it claims it is exempt. The hardship that Capital claims is that it would cost $15,800 to install the controls on both elevators, and that its annual net income from the apartments is approximately $69,958. Thus, Capital claims the installation would cost almost 25% of one year's net income from the apartments. We do not find this argument compelling. The one-time cost of retrofitting the elevators is likely to be minimal compared to the long-term income from the Shaker House Apartments and thus it does not constitute an unnecessary hardship.[2]
 {¶ 26} Capital also argues that the Ohio Supreme Court would forbid the enforcement of the top-of-car requirement where there has been no finding that the condition created a nuisance. In support of its argument, Capital cites Gates Co. v. HousingAppeals Bd. of Columbus (1967), 10 Ohio St.2d 48,225 N.E.2d 222, which held:
{¶ 27} "In the absence of a determination that the continueduse of improved real property without conforming to buildingstandards subsequently adopted would constitute a nuisance,improvements necessary to comply with the new standards may notconstitutionally be compelled by a public agency against theprivate owner of such property."Id. at syllabus.
 {¶ 28} Capital claims that no evidence was presented to show that anyone was injured by its elevators or that the absence of the top-of-car controls interfered with any public right or caused any annoyance or inconvenience to the public. Therefore, it contends that its elevators did not constitute a nuisance as a matter of law.
 {¶ 29} We addressed the same argument in Shaker North and determined that it was without merit, reasoning as follows:
{¶ 30} "First, the police power of the city provides more thanenough authority for the city to require a safety modification aslong as it is not unreasonable: `the constitutional right of theindividual to use private property has always been subservient tothe public welfare * * * [and] such use is subject to thelegitimate exercise of local police power * * *.' Northern OhioSign v. Lakewood (1987), 32 Ohio St.3d 316, 318,513 N.E.2d 324.
 {¶ 31} Second, the lack of the elevator top operating deviceconstitutes a nuisance per se. OAC 4101:5-3-01(B) adopts theANSI/ASME A 17.3 1996 Safety Code for Existing Elevators andEscalators. The authority for formulating rules is given to theBoard of Building Standards by R.C. 4105.011(A), which requiresin part that the Board formulate and adopt rules governing thedesign, construction, repair, alteration, and maintenance ofelevators. Such rules shall prescribe uniform minimum standardsnecessary for protection of the public health and safety * * *.'
 {¶ 32} OAC 4101:5-1-05 requires the inspector to `issue anadjudication order in accordance with section 4105.11 of theRevised Code.'R.C. 4105.11 states in pertinent part that thecourt ` * * * shall not affirm the order of the agency [board ofbuilding appeals] unless the preponderance of the evidence beforeit supports the reasonableness and lawfulness of such order, andof any rules upon which the order of the agency is based in itsapplication to the facts involved in the appeal. Failure tocomply with the requirements of any order pursuant to thissection * * * is hereby declared a public nuisance.'
 {¶ 33} Thus our standard is whether there is a preponderanceof evidence supporting the reasonableness and lawfulness of theorder. If there is, then the noncompliant elevator is statutorilydeclared a nuisance.
 {¶ 34} R.C. 3767.01 defines a nuisance in part as `that whichis defined and declared by statutes to be a nuisance * * *.' Theelevator statute declares, `failure to comply with therequirements of any order issued pursuant to this section * * *is hereby declared a public nuisance.'R.C. 4105.11. This rule isincorporated into the Ohio Basic Building Code and the BuildingCode of the City of Cleveland" Shaker North, supra.
 {¶ 35} Thus, the burden rests with Capital to show that its elevators qualify for an exemption from the safety requirements.Shaker North, supra. Capital claimed, without documentation, that the absence of the top-of-car controls is not a serious hazard when one incident out of 150,000 inspections occurred in the City. Additionally, Capital states that it is exempt from the safety requirements because its elevators have not caused any injury as a result of the absence of the top-of-car controls. While this may be true, the City provided sufficient evidence to support the need to protect its elevator inspectors from harm with the installation of top-of-car controls. The City claimed that without the controls the inspectors who are working on top of the car are at the peril of someone pushing the elevator call button, which may override the stoppage of the elevator car. The City also stated that it had cited and received compliance from approximately 250 elevator units regarding the installation of top-of-car controls.
 {¶ 36} Therefore, Capital has failed to prove that its elevators qualify for an exemption. We find no errors of law and, therefore, the sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J. and Rocco, J. concur.
[1] The top-of-car operating device allows an inspector or service personnel to control the elevator car while on top of it.
[2] Furthermore, in Shaker North we found that it was the building owner's burden to produce evidence demonstrating the cost in proportion to the building's value. Id. at 9 and fn. 7. No evidence was presented to establish the value of the Shaker House Apartments.