OPINION
{¶ 1} Defendants-appellants Jack Koury, et al. appeal the January 14, 2004 Judgment Entry (Nunc Pro Tunc of 1/12/04) entered by the Stark County Court of Common Pleas, which granted plaintiff-appellee City of Canton's motion for summary judgment, and denied appellants' motion for partial summary judgment.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In November, 1994, the Canton City Council adopted Codified Ordinance Section 1130.09 ("the 1994 Ordinance"), which regulated public bench signs in the City of Canton. Appellants Jeff Koury and Don Campbell were partners in a business known as Bench Signs Unlimited. On or about January 18, 1995, the City of Canton Zoning Inspector issued permit # 95-14 to appellants. This permit allowed appellants to place approximately 400 bench signs at Stark Area Regional Transit Authority ("SARTA") bus stop locations. Appellant Koury signed the permit, which indicated Bench Signs Unlimited agreed to comply with city zoning regulations, and, in addition, only place bench signs at bus stop locations which had bus stop signs.
 {¶ 3} On February 6, 1997, and March 20, 1998, the City sent letters to appellants, advising appellants of certain bench signs which were alleged not to be in compliance with the 1994 Ordinance. The February 6, 1997 letter identified 54 bench signs in noncompliance; the March 20, 1998 letter identified approximately 16 bench signs in noncompliance.
 {¶ 4} On October 13, 2000, the City of Canton and the city's zoning inspector filed a Complaint in Stark County Court of Common Pleas Case No. 2000CV02581, seeking injunctive relief as well as money damages. The Complaint alleged appellants had failed to comply with the 1994 Ordinance and had breached the parties' agreement to limit bench signs to bus stop locations with bus stop signs. The trial court conducted an evidentiary hearing. Via Judgment Entry filed June 14, 2001, the trial court found the City's revocation of permit # 95-14 was valid and effective. Appellants appealed to this Court. We reversed and remanded. City ofCanton v. Campbell, Stark App. No. 2001CA00205, 2002-Ohio-1856. Upon remand, the trial court ordered the parties to brief their respective positions on the remand issues. Via Judgment Entry filed January 12, 2004, the trial court found the City had provided appellants with written notice of noncompliance and an opportunity to cure with respect to 66 bench signs, and the City had demonstrated appellants failed to cure these specific violations within a reasonable period of time. Via Judgment Entry filed March 31, 2004, the trial court found the City was entitled to $1,375 as damages for the removal of the bench signs still in existence, and found appellants responsible for the cost of the action. The trial court found an award of attorney's fees unwarranted in the situation. Appellants appealed to this Court. This Court affirmed. Cityof Canton v. Campbell, Stark App. No. 2004CA00132, 2005-Ohio-1064.
 {¶ 5} On February 10, 2003, while Case No. 2000CV02581 was pending, the City of Canton filed a Complaint for Declaratory Judgment in Stark County Court of Common Pleas Case No. 2003CV00485, seeking a declaration Ordinance No. 110-2202 ("the 2002 Ordinance"), which amended the 1994 Ordinance and which was passed on July 15, 2002, was valid and constitutional on its face and as applied to appellants. Appellants filed a counterclaim, asserting the 2002 Ordinance was not applicable to appellants, but, if applicable, such application would constitute a governmental taking for which the City must compensate appellants.
 {¶ 6} The parties filed respective motions for summary judgment. The trial court conducted a hearing on the motions. At the hearing, appellants stipulated the 2002 Ordinance was constitutional on its face, and the trial court granted summary judgment in the City's favor on that issue. The remaining issues before the trial court were: 1)whether the 2002 Ordinance was constitutional as applied to appellants; and 2) if it was, whether the application of the 2002 Ordinance to appellants constituted a governmental taking for which appellants much be compensated.
 {¶ 7} Via Judgment Entry filed January 12, 2004, the trial court granted summary judgment in favor of the City. The trial court found the 2002 Ordinance was constitutional as applied to appellants, and, as applied to appellants, did not amount to a taking; therefore, the City was not required to compensate appellants. The trial court issued a Nunc Pro Tunc entry on January 14, 2004.
 {¶ 8} It is from this Judgment Entry appellants appeal, raising the following assignments of error:
 {¶ 9} "I. THE TRIAL COURT ERRED BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT IN FINDING, AS A MATTER OF LAW, THAT APPELLANTS DO NOT HAVE PROPERTY RIGHTS IN THE PERMITS ISSUED BY APPELLEE CITY.
 {¶ 10} "II. THE TRIAL COURT ERRED BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT IN FINDING, AS A MATTER OF LAW, THAT APPELLANTS' BENCHES CONSTITUTE A PUBLIC NUISANCE, WHERE MATERIAL QUESTIONS OF FACT REMAIN TO BE DETERMINED.
 {¶ 11} "III. THE TRIAL COURT ERRED BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT AND FINDING, AS A MATTER OF LAW, THAT APPELLEES' CLAIMS WERE NOT BARRED BY THE DOCTRINE OF RES JUDICATA.
 {¶ 12} "IV. THE TRIAL COURT ERRED BY DENYING APPELLANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, BECAUSE ORDINANCE SECTION 1130.09, AS AMENDED BY ORDINANCE NO. 110-2002, IS A RETROACTIVE ZONING ORDINANCE WHICH DOES NOT PERMIT PREEXISTING USES TO CONTINUE AS NON-CONFORMING USES."
 I, II, III {¶ 13} We have reviewed the motions for summary judgment along with the entire record below. After consideration, we hereby adopt the well-reasoned and well-written opinion of the trial court which is attached hereto and incorporate by reference herein. For the reasons advanced in that opinion, appellants' first, second, and third assignments of error are overruled.
 IV {¶ 14} In their final assignment of error, appellants maintain the trial court erred in denying their motion for partial summary judgment as the 2002 Ordinance was a retroactive zoning ordinance which does not permit preexisting uses to continue as non-conforming uses.
 {¶ 15} R.C. 713.15 prohibits retroactive zoning ordinances in certain circumstances and provides for the continuation of non-conforming uses. The purpose of R.C. 713.15 is to permit a preexisting use to continue as a non-conforming use so as not to deprive an owner of a "vested right."Akron v. Chapman (1953), 160 Ohio St. 382, para. 2 of the syllabus.
 {¶ 16} Having found supra, appellants have no vested right in the permits, we find the statute inapplicable to appellants.
 {¶ 17} Appellants' fourth assignment of error is overruled.
 {¶ 18} The judgment of the Stark County Court of Common Pleas is affirmed.
Hoffman, J. Boggins, P.J. and Gwin, J. concur.
 JUDGMENT ENTRY
This matter came before the Court upon the following:
(1) Motion of Plaintiff, City of Canton[1] ("the City"), for summary judgment;
(2) Motion of Defendants, Jack Koury dba Bench Signs Unlimited, Don Campell dba Bench Signs Unlimited, and Bench Signs Unlimited, Inc. (collectively "Defendants"), for summary judgment and memorandum in opposition to the City's motion for summary judgment and in support of Defendants' motion for partial summary judgment;
(3) The City's response to Defendants' motion for partial summary judgment and memorandum in opposition to the City's request for summary judgment; and
(4) Defendants' reply to the City's response to Defendants' motion for partial summary judgment.
Upon review, the Court finds the City's motion for summary judgment well-taken and Defendants' motion for partial summary judgment not well-taken.
 Facts
On November 7, 1994, the City passed Codified Ordinance § 1130 ("the 1994 Bench Sign Ordinance"), which provided as follows:
(a) Notwithstanding the provisions and regulations contained in this chapter and notwithstanding Section 521.04(c), public bench signs may be permitted at bus stops on the routes of the Canton Regional Transit Authority. The public bench signs are not permitted in R-1, R-1A or R-2 zones of the City of Canton, but may be permitted in all other zoning areas of the City of Canton.
(b) No public bench may exceed three and one-half feet in height, six feet in width and two and one-half feet in depth. The sign erected on the public bench may not exceed six feet in width and three feet in height. There shall be only one public bench sign per Canton Regional Transit Authority bus stop, unless additional bench signs are approved by the Zoning Inspector. Said benches shall be a minimum of two feet from the street curb and parallel to the street. Said benches shall be within eight feet of the RTA bus stop sign.
(c) Any person desiring to erect public bench signs pursuant to these sections shall make application to the Zoning Inspector. The Zoning Inspector, in his discretion, may issue permits for public bench signs at Canton Regional Transit Authority bus stops within the applicable zoning district. In granting the public bench sign permit, the Zoning Inspector shall take into consideration public service, public safety and public convenience. The Zoning Inspector shall not unreasonably deny such permit. The permit fee shall be twenty dollars ($20.00) for each public bench sign. (Ord. 276-94. Passed 11-7-94.)
Prior to the passage of the 1994 Bench Sign Ordinance, no public bench signs were permitted in any right-of-way of the City "because off site advertising was not permitted in areas other than industrial areas" and because the City had an ordinance that provided that "no person shall obstruct any sidewalk or street lying between the sidewalk and the curb or gutter line." Zengler Aff't., ¶ 4.
The 1994 Bench Sign Ordinance was passed at the request of the Stark County Regional Transit Authority ("SARTA"), who had entered into a contract with Defendants to place public benches as bus stops on SARTA[2]routes. On January 18, 1995, Defendants applied for, and were granted,
Permit No. 95-14[3] ("the Permits"), which permitted Defendants to place approximately 400 bench signs throughout the City in the City's right-of-ways. Defendants paid $20.00 for each "permit", resulting in a total cost of $8,000.00 for the permits. Koury Aff't., ¶ 5. According to Defendants, they have placed over 150 bench signs throughout the City's right-of-ways. Koury Aff't., ¶ 8.
As alluded to by Defendants in thein brief, and attested to by Richard C. Zengler, Planning Analyst for the City ("Zengler"), since the enactment of the 1994 Bench Sign Ordinance, the issuance of the Permits, and the placement of bench signs in the City's right-of-ways, the parties have had an acrimonious and litigious history relative to the bench signs. See, e.g., Defendants' motion, p. 1; Zengler Aff't., ¶¶ 9-14. In his affidavit, Zengler states that while he was the City's Zoning Inspector, he began to receive numerous complaints about the benches, including complaints that benches were blocking access to sidewalks, that the benches were placed too close to the street and thereby presented a safety hazard, and that multiple benches were placed at stops without authorization. Zengler Aff't., ¶ 9. There is no evidence before the Court disputing these assertions.[4] In fact, in City of Canton v.Campbell, (April 15, 2002), unreported,
Stark App. No. 2001CA00205, a case applying the 1994 Bench Sign Ordinance to bench signs placed by Defendants in the City's right-of-ways and involving the Permits, the Fifth District Court of Appeals, remanded the case to the trial court for findings as to which specific bench signs were in noncompliance. Again, there was no finding that there were no violations. In fact, in its opinion, the Fifth District stated that "[i]tis apparent from the record that [Defendants] were notified that some ofthe benches were in noncompliance and given the opportunity to curebefore the permits were revoked." (Emphasis added.)
Eventually, SARTA terminated its contract with Defendants relative to the bench signs and Zengler appeared before Canton City Council and recommended the elimination of bench signs in the City after an amortization period. Zengler Aff't., ¶¶ 16-18. The basis for the recommendation was that the bench signs are a nuisance in that they,inter alia, violate the "American Disability Act Regulations", create traffic hazards, and detract from the aesthetics of the community. Zengler Aff't., ¶ 21. Thereafter, on July 15, 2002, the City amended the 1994 Bench Sign Ordinance, via Ordinance No. 110-2002 (hereinafter "the 2002 Bench Sign Ordinance"), to provide as follows:
(a) Notwithstanding the provisions and regulations contained in this chapter and notwithstanding Section 521.04(c), public bench signs may be permitted at bus stops on the routes of the Stark Area Regional Transit Authority. The public bench signs are not permitted in R-1, R-1A, OS, CS or R-2 zones of the City of Canton, but may be permitted in all other zoning areas of the City of Canton.
(b) No public bench may exceed three and one-half feet in height, six feet in width and two and one-half feet in depth. The sign erected on the public bench may not exceed six feet in width and three feet in height. There shall be only one public bench sign per Stark Area Regional Transit Authority bus stop, unless additional bench signs are approved by the Zoning Inspector. Said benches shall be a minimum of two feet from the street curb and parallel to the street. Said benches shall be within eight feet of the SARTA bus stop sign.
(c) Any person desiring to erect public bench signs pursuant to these sections shall make application to the Zoning Inspector. The Zoning Inspector, in his discretion, may issue permits for public bench signs at Stark Area Regional Transit Authority bus stops having a Stark Area Regional Transit Authority bus stop sign within the applicable zoning district. In granting the public bench sign permit, the Zoning Inspector shall take into consideration public service, public safety and public convenience. The Zoning Inspector shall not unreasonably deny such permit. The annual permit fee shall be twenty dollars ($20.00) for each public bench sign.
(d) An applicant shall provide proof of liability insurance under a commercial general liability insurance coverage policy with a minimum coverage of $1,000,000.00 per occurrence before a permit shall be issued.
(e) In establishing these standards, the City has determined that, without adequate regulation, public bench signs are a nuisance, and in some places create a traffic hazard and impede access to public sidewalks. All signs not conforming with the provisions of the Ordinance are hereby declared a nuisance.
(f) Permits for bench signs may be issued in accordance with the provisions of this ordinance for a period of six months from June 30, 2002 to December 31, 2002. At the end of this six month amortization period, the bench signs will no longer be permitted and must be removed within ninety (90) days at the owner's expense. (Ord. 110-2002. Passed 7-15-2002.)
The parties agree that, if applicable to Defendants, the 2002 Bench Sign Ordinance would require Defendants to remove all of the bench signs they placed in the City's right-of-ways and that the Permits would no longer be of vaiue.[5]
The City filed this declaratory judgment action against Defendants pursuant to R.C. Chapter 2721, seeking a declaration that the 2002 Bench Sign Ordinance is valid on its face and as applied to Defendants, thereby requiring Defendants to remove all of their bench signs from the City's right-of-ways. Defendants filed a counterclaim asserting that the 2002 Bench Sign Ordinance is not applicable to Defendants and that, if it is applicable, such application constitutes a governmental "taking" for which the City must compensate Defendants.
At the hearing relative to the motions for summary judgment, Defendants stipulated that the ordinance was constitutional on its face. Accordingly, the Court granted judgment in favor of the City with respect to the validity of the 2002 Bench Sign Ordinance as to this issue. As such, the only issues remaining to be decided are:
1) Whether the 2002 Bench Sign Ordinance is constitutional as applied to Defendants, and
2) If the 2002 Bench Sign Ordinance is constitutional as applied to Defendants, whether application of said ordinance to Defendants constitutes a governmental taking for which Defendants must be compensated.
 Law and Analysis
Summary judgment is appropriate where no genuine issues of material fact exist and the undisputed facts entitle the moving party to judgment as a matter of law. Ohio Civil Rule 56(C); Harless v. Willis DayWarehousing, Co., Inc. (1978), 54 Ohio St.2d 64, 375 N.E.2d 46. The Supreme Court of Ohio, in Dresher v. Burt (1996), 75 Ohio St.3d 280,662 N.E.2d 264, outlined more specifically the duties of the parties in summary judgment proceedings as follows:
Accordingly, we hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
See also, Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164
(citing, Dresher v. Burt (1966), 75 Ohio St.3d 280, 662 N.E.2d 264).
The version of R.C. 723.01 in effect at the time the 2002 Bench Sign Ordinance was enacted required that municipal corporations, such as the City, keep public highways, streets, avenues, alleys, sidewalks, public grounds bridges, aqueducts, and viaducts within the municipal corporation free from nuisance. Specifically, the statute provided, in pertinent part, as follows:
Municipal corporations shall have special power to regulate the use of the streets. * * * [T]he legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aquaducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be kept open, in repair, and free fromnuisance. (Eff. 7-1-89.)
(Emphasis added.) In conjunction with this, R.C. 715.44 authorizes a municipal corporation to abate any nuisance and to prevent any injury or annoyance from any nuisance. As such, the City has an affirmative duty to keep its right-of-ways free from nuisance and also holds the correlative authority to abate any nuisance. "An ordinance which represents an exercise of the municipality's police powers is presumed to be constitutionally valid, with the burden of showing unreasonableness being cast upon those who challenge the ordinance." Curto v. City of HarperWoods (6th Cir. Ohio 1992), 954 F.2d 1237, 1243. However,
[a] court may hold a statute unconstitutional either because it is invalid "on its face" or because it is unconstitutional "as applied" to a particular set of circumstances. Each holding carries an important difference in terms of outcome: If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances. Traditionally, a plaintiff's burden in an as-applied challenge is different from that in a facial challenge. In an as-applied challenge, "the plaintiff contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional." Ada v. Guam Soc'y of Obstetricians andGynecologists, 506 U.S. 1011, 1012, 113 S.Ct. 633, 634, 121 L.Ed.2d 564
(1992) (Scalia, J., dissenting), denying cert. to 962 F.2d 1366 (9th Cir. 1992). Therefore, the constitutional inquiry in an as-applied challenge is limited to the plaintiff's particular situation.
Women's Medical Professional Corp. v. Voinovich (6th Cir. Ohio 1997),130 F.3d 187, *193. When presented with such a challenge,
[a] court generally applies the rational-basis test in examining the constitutionality of a statute under substantive due process. Adkins v.McFaul (1996), 76 Ohio St.3d 350, 351, 667 N.E.2d 1171. To satisfy this test, a statute need only bear a rational relationship to a legitimate state purpose, and must not be arbitrary, discriminatory, capricious, or unreasonable. State v. Thompkins (1996), 75 Ohio St.3d 558, 561,664 N.E.2d 926. If, however, challenged legislation impinges upon a fundamental constitutional right, courts must examine the statute under the strict-scrutiny standard. Sorrell v. Thevenir (1994),69 Ohio St.3d 415, 423, 633 N.E.2d 504; Clark v. Jeter (1988), 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465. Under the strict-scrutiny standard, a statute unconstitutionally infringes upon a fundamental right unless the statute is necessary to promote a compelling governmental interest and is narrowly tailored to achieve that interest. See PerryEdn. Assn. v. Perry Local Educators' Assn. (1983), 460 U.S. 37, 45,103 S.Ct. 948, 74 L.Ed.2d 794; Primes v. Tyler (1975), 43 Ohio St.2d 195,198-199, 72 O.O.2d 112, 331 N.E.2d 723; Sorrell, supra, at 423, 633
N.E.2d 504. The United States Supreme Court has acknowledged that a law rarely survives such scrutiny. Burson v. Freeman (1992), 504 U.S. 191, 200,112 S.Ct. 1846, 119 L.Ed.2d 5.
Oliver v. Feldner (2002), 149 Ohio App.3d 114, 121.
In finding that a township zoning regulation that barred advertising on bench signs served, inter alia, "a substantial governmental interest by keeping the right-of-ways clear and the township aesthetically attractive, preventing obstruction of views and motorist distractions . . ., in Bench Signs Unlimited, Inc. v. Lake Twp. Bd. of Zoning Appeals
(Oct. 7, 2002), unreported, Stark Cty. App. Case No. 2002CA00096, the Fifth District Court of Appeals noted that "[c]ourts have routinely upheld restrictions on commercial advertising signs in the interests of traffic safety and aesthetics, Id., citing Genesis Outdoor, Inc. v.Cuyahoga Hts., unreported, Cuy. App. Case No. 79781, 2002-Ohio-2141, 2002WL96295).
In Ghaster Properties, Inc. v. Preston (1964), 176 Ohio St. 425, the Supreme Court of Ohio held that "legislation may provide that a particular use of land shall be unlawful or a nuisance even though such use had theretofore been lawful[,]" and that "[w]here a valid statute has prohibited a particular use of property or has provided that such use shall constitute a nuisance, the owner no longer has a lawful or legitimate right to so use his land." Id., syllabus, ¶¶ 2-3.
In Northern Ohio Sign Contractors Assn. v. Lakewood (1987),32 Ohio St.3d 316, the Supreme Court of Ohio likewise held that a city, pursuant to its police power, has the authority to abate a preexisting use that has become a nuisance. Id., at syllabus, ¶ 2.
The City enacted the 2002 Bench Sign Ordinance, which, after an amortization period, effectively prohibits the placement of bench signs in the City's right-of-ways. The City did so after receiving information from its zoning inspector of numerous complaints concerning, inter alia,
that the benches were blocking access to sidewalks and placed too close to streets, thereby creating a safety hazard. In passing the 2002 Bench Sign Ordinance, Canton City Council specifically declared as follows:
In establishing these standards, the City has determined that, without adequate regulation, public bench signs are a nuisance, and in some places create a traffic hazard and impede access to public sidewalks. All signs not conforming with the provisions of the Ordinance are hereby declared a nuisance.
The Court finds that the 2002 Bench Sign Ordinance bears a rational relationship to a legitimate state purpose, and is not arbitrary, discriminatory, capricious, or unreasonable. Specifically, the Court finds that the legitimate state purpose advanced by said ordinance is to keep the City's right-of-ways free from safety hazards, which Canton City Council determined had risen to the level of a nuisance. As discussed previously, such a purpose has been upheld previously by the Fifth District Court of Appeals In Bench Signs Unlimited, Inc. v. Lake Twp.Bd. of Zoning Appeals, supra. To this end, the Court again emphasizes that Defendants do not dispute that said ordinance is constitutional on its face.
Defendants assert that the Ordinance is unconstitutional as applied to them because it deprives them of a constitutionally protected property right in the Permits. The Court finds, however, that Defendants do not have such a right in the Permits.
To begin with, the Fifth Amendment to the United States Constitution provides that private property shall not "be taken for public use, without just compensation." The Ohio Constitution reiterates this notion in Article l § 19, which states, in pertinent part: "[W]here private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money." Inherent in these principles is the notion that one must have a right to the property in order to be compensated for the inability to use it.
According to Defendants, the private property at issue in the instant matter are the Permits. Defendants further assert that the Fifth District Court of Appeals determined in Campbell, supra, that the Permits are to be treated as though they are analogous to "conditional use permits". The pertinent portion of the opinion in Campbell states as follows:
We find the Zoning Inspector's decision as to whether to issue a bench sign permit analogous to the decision whether to issue a conditional use permit. When a use is conditional, the decision maker may impose necessary conditions and safeguards to assure that the standards of the ordinance are met.
Id.
This Court disagrees with Defendants' interpretation of the Campbell
opinion. The Fifth District did not find that the Permits were conditional use permits or that they were even analogous to conditional use permits. Rather, the Fifth District found that the decision making process used in determining whether or not to issue the Permits was analogous to thedecision making process used in issuing conditional use permits.
The Permits allowed Defendants to use property owned by the City — that is, the public — for Defendants' own benefit. In essence, the Permits embody permission by the City to use public property, specifically, public right-of-ways, for the placement of Defendants' benches. As such, the Court finds that the Permits are akin to a license.
A license is "a permission to do some act or series of acts on the land of the licensor, without having permanent interest in it." Yeager v.Tuning (1908), 79 Ohio St. 121; Fairbanks v. Power Oil Co. (1945),81 Ohio App. 116, 123. Additionally, "a license to do an act upon land involves exclusive occupation of the land by the licensee so far as is necessary to do the act and no further." Bewigged by Suzzi, Inc. v.Atlantic Dept. Stores, Inc. (1976), 49 Ohio App.2d 65, ¶ 12 at syllabus. A license is "a mere personal or revocable privilege. . . ."Yeager, supra. "A licensee has no right to the continued existence of a license. The licensor may at any time revoke this license without compensating the licensee. Norwood v. Forest Cemetary (1st Dist., 1984),16 Ohio App.3d 411, 418.
The nature of the Permits permitting use of the City's right-of-ways, however, is inconsequential to the Court's analysis relative to whether Defendants are owed compensation for a taking. Very simply, "[al municipality is not required to provide compensation for abating a nuisance." See, McMaster v. City of Akron Housing Appeals Bd. (July 20, 1994), unreported, Summit Cty. App. Case No. 16665, 1994WL374523 citing,Northern Ohio Sign Contractors Assn. v. Lakewood (1987), 32 Ohio St.3d316, 319. It would indeed be ironic if the very person or persons who created a public nuisance were required to be compensated by the government when the government take steps to abate that nuisance. This is particularly true where, as in this case, the nuisance caused by the bench signs exists on public right-of-ways. A municipality must, at a minimum, possess the police power necessary to protect its citizens from dangers and hazards that exist on public property, especially when those dangers are created by a private citizen for his own material benefit and, particularly, when the General Assembly has mandated that a municipality has an affirmative duty to keep its right-of-ways free from nuisance. R.C. 715.44.
Defendants argue that the doctrine of res judicata prohibits the City from arguing that the bench sings constitute a nuisance for the reason that the trial Court in Campbell, supra, failed to find that the bench signs constituted a nuisance. Upon review of the decision of the Fifth District Court of Appeals, it appears that the issue of nuisance wasnever determined.[6] As such, this Court finds that the doctrine of res judicata does not bar litigation of this issue. See, e.g., Dater v.Charles H. Dater Foundation (Dec. 30, 2003), unreported, Hamilton Cty. Case Nos. C-020675 C-020784, 2003WL23024026, citing, Grave v.Parkman, 73 Ohio St.3d 379, 1995-Ohio-331, syllabus ¶ 1; Ameigh v.Baycliffs Corp., 81 Ohio St.3d 247, 1998-Ohio-467(under the doctrine of res judicata, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claims arising out of the transaction or occurrence that was the subject matter of the previous action. Thus, in order for res judicata to apply, a party must demonstrate that a valid, final judgment has been rendered upon the merits. . . .").
Additionally, the ordinance being considered in Campbell, supra, was the 1994 Bench Sign Ordinance, whereas the ordinance involved in the within action is the 2002 Bench Sign Ordinance, with its attendant city council finding of nuisance. In conjunction with this, it is not necessary that the City prove that each bench sign individually represents a nuisance. Northern Ohio Sign Contractors Assn., supra, at 319.
Finally, it is not as if Defendants did not receive value for the Permits. On the contrary, Defendants had the ability to use the Permits for over eight (8) years. In conjunction with this, Defendants will still have the use of their bench signs by placing them at other locations where their use is permitted.
Conclusion
With respect to the City's motion for summary judgment, construing the evidence most strongly in favor of Defendants, the Court finds that there is no genuine issue of fact for trial and, as a matter of law, the 2002 Sign Bench Ordinance is constitutional as applied to Defendants and that, given the expiration of the amortization period, Defendants are hereby required to remove all bench signs that have been placed in the City's right-of-ways. The Court further finds that, as applied to Defendants, the 2002 Bench Sign Ordinance does not amount to a taking and, therefore, the City is not required to compensate Defendants for the Permits or any other matter related thereto. As such, the Court finds that the City is entitled to summary judgment in its favor as a matter of law. The City's motion for summary judgment is, therefore, hereby,SUSTAINED and Defendants' motion for partial summary judgment is, therefore, hereby, OVERRULED.
 IT IS SO ORDERED.
[1] There are actually two plaintiffs, the City of Canton, Ohio and Darla Hinderer, Zoning Inspector for the City. For ease of reference, and due to the nature of the claims in this-declaratory judgment action, only the City will be referenced throughout the text of the opinion. The Court's judgment relative to the City, however, will also apply to its zoning inspector as well.
[2] At the time, SARTA was known as the Canton Regional Transit Authority.
[3] City of Canton v. Campbell (April 15, 2002), unreported, Stark App. No. 2001CA00205, the Fifth District Court of Appeals found that, In reality, 400 permits were issued.
[4] In his affidavit filed on behalf of Defendants, Mr. Koury statesthat "[t]o the best of [his] knowledge, no benches are currently located at sites that do not have bus stop signs or impede wheelchair access. Koury Aff't., ¶ 10 (emphasis added). This statement is a far cry from denying or creating a fact issue as to whether Defendants' benches ever blocked access to sidewalk and were placed too close to streets, thereby presenting a safety hazard. Nor does Mr. Koury's affidavit describe the placement of the bench signs leading up to the time when the 2002 Bench Sign Ordinance was enacted. The evidence on this issue reflects that there were violations relative to placements that did create a safety hazard.
[5] The Court notes that the parties have been involved in intensive and lengthy litigation over the bench signs in the case of City of Cantonv. Campbell, infra.
[6] The decision of the Fifth District Court of Appeals in Campbell,supra, addressed whether Defendants' bench signs violated the 1994 Bench Sign Ordinance, and also, whether the City was entitled to attorneys fees.