[Cite as *Cleveland v. Brown*, 2012-Ohio-702.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 96964

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## MICHAEL BROWN, JR.

DEFENDANT-APPELLANT

### JUDGMENT:
### AFFIRMED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2011CRB 005220

**BEFORE:**    Blackmon, A.J., Stewart, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**    February 23, 2012

**ATTORNEY FOR APPELLANT**

Myron P. Watson
420 Lakeside Place
323 West Lakeside Avenue
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Barbara Langhenry
Interim Director of Law
City of Cleveland
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114

Victor R. Perez
Chief City Prosecutor

Connor P. Nathanson
Assistant City Prosecutor
Justice Center 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, A.J.:

**{¶1}** Appellant Michael Brown, Jr. appeals his conviction and assigns the following error for our review:

> **I. The trial court erred in finding the appellant guilty since the evidence was legally insufficient to prove the charge of criminal simulation beyond a reasonable doubt.**

**{¶2}** Having reviewed the record and pertinent law, we affirm Brown's conviction. The apposite facts follow.

**{¶3}** On February 15, 2011, counterfeit bills were tendered in payment for drinks and dances at the Larry Flint Hustler Club in Cleveland, Ohio. As a result, Brown and a friend, Antonio Del Rio, were arrested and subsequently charged with criminal simulation. Brown

pleaded not guilty at his arraignment, multiple pretrials followed, and on May 25, 2011, a bench trial commenced.

## Bench Trial

{¶4} Prior to calling the first witness, the prosecution and the defense stipulated that the bills were counterfeit. The prosecution's first witness was Jandro Czetoval, the club's manager, who testified that on the night in question, two of his employees, a waitress and an exotic dancer, reported that they had received counterfeit bills from patrons of the club. A total of $80 was tendered; the waitress received $60 and the dancer $20. Czetoval inspected the money, confirmed the employees' suspicion, and summoned the police.

{¶5} While waiting for the police to arrive, Czetoval approached Del Rio and Brown and told them that they had issued counterfeit bills. Del Rio offered to give Czetoval real currency in exchange for the counterfeits, but Czetoval refused and indicated that he was not allowed to return the counterfeits. Later, Czetoval observed Del Rio and Brown standing in a corner separating the counterfeit bills from the real currency.

{¶6} Lieutenant Jerome Barrow, a 31 year veteran with the Cleveland Police Department, responded to the club along with two other detectives. Lieutenant Barrow met with Czetoval, inspected the bills that had been tendered, and found them to be counterfeits. Lieutenant Barrow subsequently approached Brown and Del Rio and asked them for all money on their persons. Brown turned over $80 dollars in counterfeit bills. Del Rio initially handed over $98 in real currency, but subsequently handed over $820 in counterfeit bills. Lieutenant Barrow then arrested Brown and Del Rio.

**{¶7}** Detective Michael Schroeder verified that Brown and Del Rio handed over counterfeit bills. Detective Schroeder immediately recognized the bills as counterfeits because of the coarseness and dullness of the paper. Additionally, Detective Schroeder stated that the margins of some bills were off centered and some bills had the same serial number. Detective Schroeder confirmed the nature of the bills by drawing a line across them with a marker used to detect counterfeits. Detective Schroeder stated that when he marked the bills, the line came out brown indicating that they were counterfeits.

**{¶8}** The trial court found Brown guilty as charged, sentenced him to six months in jail, but suspended the sentence, placed him on one year of inactive probation, and ordered him to pay $250 in fines plus court costs. Brown now appeals.

### Sufficiency of Evidence

**{¶9}** In the sole assigned error, Brown argues his conviction was not supported by sufficient evidence. We disagree.

**{¶10}** Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of evidence review require the same analysis. *State v. Mitchell*, 8th Dist. No. 95095, 2011-Ohio-1241, 2011 WL 917015, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.

**{¶11}** In analyzing the sufficiency issue, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 574

N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Carter*, 72 Ohio St.3d 545, 651 N.E.2d 965 (1995).

{¶12} The trial court found Brown guilty of criminal simulation in violation of R.C. 2913.32. The statute provides in pertinent part:

> **(A) No person, with purpose to defraud, or knowing that he is facilitating a fraud, shall do any of the following:**
>
> **(1) Make or alter any object so that it appears to have value because of antiquity, rarity, curiosity, source, or authorship, which it does not in fact possess;**
>
> **\* \* \***
>
> **(4) Utter, or possess with purpose to utter, any object that the person knows to have been simulated as provided in division (A)(1), (2), or (3) of this section.**

{¶13} In the instant case, we note the record supports and the parties stipulated that the bills were counterfeit. It is also undisputed that counterfeit bills were found in the possession of both Brown and Del Rio. Further, the evidence established that due to their coarseness, dullness, and off-centered margins, the bills in both Brown's and Del Rio's possession were immediately recognizable as counterfeit. Thus, the average person could infer that Brown would have been easily able to tell that the bills in his possession were counterfeit, had they been surreptitiously passed to him by someone else.

{¶14} Nonetheless, Brown argues that not only did the prosecution fail to present any evidence that he tendered any of the counterfeit bills on the night in question, but the prosecution also failed to establish, beyond his mere possession, that he intended to utter the counterfeit bills.

{¶15} Because a defendant's mental state is difficult to demonstrate with direct evidence, it may be inferred from the surrounding circumstances in the case. *State v. Scheiman*, 9th Dist. No. 04CA0047-M, 2005-Ohio-15, 2005 WL 17900, citing *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). Culpable mental states can be established by circumstantial as well as direct evidence. *State v. Kincaid*, 9th Dist. No. 01CA007947, 2002-Ohio-6116, 2002 WL 31513544, citing *Kreuzer v. Kreuzer*, 144 Ohio App.3d 610, 613, 761 N.E.2d 77 (2d Dist. 2001). Further, circumstantial evidence is given the same weight as direct evidence. *State v. Anderson*, 8th Dist. No. 92879, 2010-Ohio-1663, 2010 WL 1509350.

{¶16} Here, the evidence supporting the inference that Brown possessed the counterfeit bills with the purpose to utter include the fact that Brown had no legitimate currency on his person; Brown only had $80 in counterfeit bills; and Brown was present in an establishment, whose patrons are expected to purchase beverages, dances, or both. Thus, given that Brown had no legitimate currency, but only counterfeit bills, and was present as a patron of the club, the average person could infer that he had, or intended to tender, the counterfeit bills in exchange for goods and services. In other words, Brown had no legitimate currency to pay for the goods or services that he intended to acquire on the night in question.

{¶17} Moreover, the manager testified that after he had summoned the police, confronted Del Rio and Brown, and had refused Del Rio's offer of legitimate currency in return for the counterfeit bills, he saw both men standing in a corner separating the counterfeit bills from the real currency. As such, the foregoing circumstantially establishes that Brown possessed the counterfeit bills with the purpose to utter, and is therefore guilty of criminal simulation in violation of R.C. 2913.32.

**{¶18}** After a careful review of the record, and upon viewing the evidence in the light most favorable to the prosecution and considering all reasonable inferences regarding Brown's mental state, we cannot conclude that the trial court lost its way when it found Brown guilty of criminal simulation. Based upon the surrounding facts and circumstances, a trier of fact could reasonably conclude that Brown either had the intent to defraud in order to obtain drinks and dances, or had done so knowingly. Accordingly, we overrule the sole assigned error.

**{¶19}** Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

PATRICIA ANN BLACKMON, ADMINISTRATIVE JUDGE

MELODY J. STEWART, J., and EILEEN A. GALLAGHER, J., CONCUR