[Cite as *Columbus v. Reiner*, 2018-Ohio-975.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Columbus, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 16AP-513 |
| v. | : | (M.C. No. 2015ERB-073788) |
| Walter G. Reiner, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 15, 2018

**On brief:** *Richard C. Pfeiffer, Jr.,* City Attorney, and *Orly Ahroni,* for appellee. **Argued:** *Orly Ahroni.*

**On brief:** *Eric E. Willison,* for appellant. **Argued:** *Eric E. Willison.*

APPEAL from the Franklin County Municipal Court,
Environmental Division

HORTON, J.

{¶ 1} Defendant-appellant, Walter G. Reiner, appeals from a judgment of the Franklin County Municipal Court, Environmental Division, finding him guilty of violating two provisions of the Columbus Health, Sanitation and Safety Code ("the HSS Code"), i.e, Columbus City Code ("CCC") 709.03(B), Standards Relative to Noxious Weeds, and CCC 707.03(A), Standards Relative to Solid Waste, both misdemeanors of the first degree. For the following reasons, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The pertinent facts are as follows. Appellant is the owner or the person having charge of property located at 5030 Westerville Road in Columbus, Ohio ("the property"). On August 27, 2014, Code Enforcement Officer Patrick Wilkens received a

complaint that appellant had high grass, weeds, and solid waste on his property. Officer Wilkens inspected the property that same day and observed high grass and noxious weeds throughout most of the property. He also observed solid waste that consisted of a large pile of broken granite countertop pieces deposited on the ground.

{¶ 3} Officer Wilkens issued violation notices to appellant which stated that criminal charges might be filed if he did not correct the violations. The notice instructed appellant to cut all noxious weeds and grass growing in excess of 12 inches on his property, and to remove the solid waste. The notice was served on appellant on August 28, 2014.

{¶ 4} On October 7, 2014, Code Enforcement Officer Kyle Kirker took over the file. Officer Kirker testified that he inspected the property and served a non-compliance warning letter on appellant on December 22, 2014. He testified that, among other noxious weeds growing on the property, there were poison hemlock, poison ivy, burdock, thistles, and jimson weed. Officer Kirker stated that the types of noxious weeds growing on appellant's property were poisonous, invasive weeds that could take over natural ecosystems and move quickly to adjacent properties if left unchecked.

{¶ 5} Officer Kirker also testified that the granite countertop pieces were not stored in a sanitary manner because they were piled up on the ground. By being stored on the ground, they could create a habitat for rodents and vermin such as rats, mice, groundhogs, and snakes. The pile of granite on appellant's property had cracks and crevices into which vermin could enter. Officer Kirker further testified that the large pile of granite countertop pieces was particularly dangerous because it was in close proximity to residential areas.

{¶ 6} Based on appellant's requests for additional time to correct the violations, Officer Kirker granted extensions on February 13 and April 22, 2015. On June 16, 2015, Officer Kirker reinspected the property and found that the violations persisted. On July 2, 2015, over ten months after the initial violation notice, Officer Kirker once again reinspected the property and noted that appellant continued to have high grass and noxious weeds throughout most of his property. He also had not removed the solid waste. Officer Kirker swore out a complaint on July 7, 2015, which was filed with the Franklin County Municipal Court on July 15, 2015.

{¶ 7}    The complaint alleged that appellant on or about July 2, 2015 was the owner or person having charge over the property and he allowed the growth of grass and various weeds in excess of 12 inches in height in violation of CCC 709.03, and he stored solid waste, debris, and rubbish in violation of CCC 707.03.

{¶ 8}    The case was tried to the court over several days in April 2016.  The trial court found that appellee produced testimony of Officers Wilkens and Kirker that detailed the property in question being in violation dating back to August 27, 2014 and continuing through July 2, 2015. Appellee also produced photographic evidence of high grass and weeds throughout appellant's property.

{¶ 9}    As to the solid waste, appellant argued that he had a nonconforming use of his property as a plant nursery and landscaping business which permitted him to store the granite countertop pieces on his property. He argued that the granite pieces were not solid waste. The trial court disagreed and found that the granite pieces were solid waste and that they were an attractive nuisance for illegal dumping on appellant's property. (May 5, 2016 Decision and Entry at 3-4.) The court also found that appellant did not prove that he had a nonconforming use, and even if he did, the HSS Code may be enforced against nonconforming uses.  (Decision and Entry at 2-3.)

{¶ 10} As such, the trial court found that, based on the testimony and exhibits presented at trial, appellant was guilty of both counts.  Appellant was sentenced to a 180 day jail term, with all of it suspended. In addition, although appellant was not fined, he was required to pay $259 in court costs, along with a probation supervision fee of $360.

## II. ASSIGNMENT OF ERROR

{¶ 11} Appellant appeals, assigning the following errors:

> I. The Trial Court erred when it convicted the defendant for the growth of certain weeds when there was no evidence, let alone evidence beyond a reasonable doubt, that those weeds existed when the original order from the City of Columbus was served upon the Defendant.
>
> II. The Trial Court erred when it found that the granite pile on the Defendant's property was "solid waste" and/or found that the use was not allowed by zoning ordinance.

III. The Trial Court erred when it ignored the evidence of previous nonconforming uses of the property prior to the present rules and regulations.

IV. The Trial Court err [sic] when it allowed the City of Columbus to engage in selective enforcement of the its [sic] code sections concerning weed growth.

## III. PRELIMINARY MATTERS

{¶ 12} We first note that appellant makes allegations in his briefs that fall outside the parameters of his assignments of error. Pursuant to App.R. 12(A)(1)(b), an appellate court must "determine [an] appeal on its merits on the assignments of error set forth in the briefs under App.R. 16." Thus, this court rules on assignments of error only, and will not address mere arguments. *Ellinger v. Ho*, 10th Dist. No. 08AP-1079, 2010-Ohio-553, ¶ 70, quoting *In re Estate of Taris*, 10th Dist. No. 04AP-1264, 2005-Ohio-1516, ¶ 5. Accordingly, we will address appellant's assignments of error only and disregard his extraneous allegations, which we note are not supported by the record properly before this court. *Blevins v. Blevins*, 10th Dist. No. 14AP-175, 2014-Ohio-3933, ¶ 12. For ease of discussion and for logical reasons, we will address appellant's assignments of error out of order.

## IV. ASSIGNMENT OF ERROR ONE–NOXIOUS WEEDS AND GRASS

{¶ 13} In appellant's first assignment of error, he alleges that the trial court erred in convicting appellant for the growth of certain weeds when there was no evidence that those weeds existed when the original order was served on appellant. We are interpreting appellant's use of the words "original order" to refer to the August 27, 2014 notice of violation, which was served on appellant on August 28, 2014.

{¶ 14} Appellant alleges that the notice of violation is a condition precedent to filing a criminal complaint against appellant. He claims that it is common knowledge that weeds die over the winter, in this case, the winter of 2014-15, and that in the spring and summer, new weeds may well grow. Appellant argues that no evidence was introduced to say whether the weeds observed on July 2, 2015, were the same weeds that were observed in August 2014, the subject of the notice of violation.  As such, appellant claims that the new weed growth should have been the subject of a new notice of violation as a condition

precedent to the filing of the complaint, the basis of this action. Therefore, appellant claims the complaint should be dismissed. We disagree.

{¶ 15} First, we note that appellant was charged with violations of the HSS Code for the condition of his property only on or about July 2, 2015, not August 2014. Appellant was charged with, on or about July 2, 2015, having high grass and weeds on his property, in violation of CCC 709.03(B), which provides in relevant part, "No owner or person having charge shall permit to grow on any property or premises in the city, any * * * thistles, burdock, jimson weed, * * * poison ivy, * * * grass or other noxious weeds, exceeding twelve (12) inches in height."

{¶ 16} Appellant cites to nothing in the record to support his claim that all of the weeds died during the winter of 2014-15. In fact, the noncompliance warning letter of December 22, 2014, and the two extensions granted to appellant would indicate otherwise. More importantly, contrary to appellant's argument, if there are reasonable grounds to believe that there is a violation of the code, a notice of violation is not a condition precedent and is not required to be issued prior to criminal charges being filed. CCC 701.19. Criminal complaints may be filed for violations of the code. CCC 701.07(B)(1); 701.19(G).

{¶ 17} CCC 701.19 provides, in pertinent part:

> Whenever, upon inspection the director determines that there are reasonable grounds to believe that there is a violation of this Health, Sanitation and Safety Code resulting in the existence of an actual or potential public nuisance, or whenever there exist conditions that adversely affect the health, safety or welfare of any person, or when notices issued pursuant to this code * * * do not alleviate such a public nuisance or condition, the director may:
>
> * * *
>
> (G) Cause to be filed a criminal complaint in a court of jurisdiction.

{¶ 18} The word "or" in CCC 701.19 signifies that one of following conditions must occur before a criminal complaint may be filed: (1) after an inspection is conducted, there are reasonable grounds to believe that there is a violation of the HSS Code resulting in the existence of an actual or potential public nuisance; or (2) conditions exist that adversely

affect the health, safety or welfare of any person; or (3) notices of violation were issued which did not alleviate the public nuisance or condition. Public nuisance means "real property which is not in compliance with any * * * health or sanitation ordinance of the Columbus City Codes or Columbus City Health Code." CCC 703.17. In this case, the first condition was met and a notice of violation was not required prior to criminal charges being filed.

{¶ 19} In addition, CCC 701.11(A) which governs the issuance of a notice of violation, states: "Whenever the director determines, or has reasonable grounds to believe, that there exists a condition that violates * * * this Health, Sanitation and Safety Code, the director may issue a notice setting forth the alleged violations and advising the owner or person having charge that such violations must be corrected."  "Usage of the term 'may' is generally construed to render optional, permissive, or discretionary the provision in which it is embodied." *State ex rel. Niles v. Bernard*, 53 Ohio St.2d 31, 34 (1978). Thus, a notice of violation may be issued but is not required prior to filing criminal charges.  Appellant's first assignment of error is overruled.

## V. ASSIGNMENT OF ERROR THREE–NONCONFORMING USES

{¶ 20} Appellant's property was annexed to the city of Columbus in 1972. Thereafter, in 1976, appellant's property was rezoned from Residential District to Commercial Planned Development District. Appellant argues in his merit brief that prior to the annexation, and approved by the 1976 rezoning, he had a prior nonconforming use of the property, i.e., horticulture, agriculture, and landscaping.  A nonconforming use of land is a use that was lawful before the enactment of a zoning ordinance, but one which, although no longer valid under the current zoning rules, may be lawfully continued. *State ex rel. Bailey v. Madison*, 10th Dist. No. 12AP-284, 2012-Ohio-4950, ¶ 14.

{¶ 21} As a result, he claims that the HSS Code provisions of which he was convicted are inapplicable to the property because of his past nonconforming use. Appellant argues that the granite pile on the property was a legal nonconforming use of the property and it was error to convict him of violating the solid waste provision of the CCC.

{¶ 22} However, in appellant's reply brief he apparently abandons this claim and states "[i]t is certainly *true that health codes can be enforced against preexisting*

*nonconforming uses.* However, the question is whether the granite was 'solid waste' or not." (Emphasis added.) (Reply brief at 11.)

{¶ 23} In light of appellant's admission above, we will briefly review the trial court's decision. The trial court found that:

> Defendant cites to an October 18, 1976 Ordinance (Ordinance 1179-76, Defendant's Exhibit 1) as proof that he had a prior nonconforming use of the property for a plant nursery, quarry, and "primarily horticultural" use. Def. Ex 1 p. 8.
>
> The Court does not find this argument to be well taken. Ordinance 1179-76 was a rezoning ordinance passed by the City of Columbus – it did not give the Defendant permission to use 5030 Westerville Rd. in any certain way. The Court finds that the Defendant failed to "reasonably demonstrate" that his property or any part thereof was for horticultural use pursuant to C.C.C. 709.03 (D). Furthermore, even if the Defendant had established a legal, non-conforming use for his property, the Court agrees with the City's assertion that the Health, Sanitation and Safety Code applies to all properties, regardless of how they are zoned or used.

(Decision and Entry at 2.)

{¶ 24} The burden of proving a nonconforming use is on the landowner. *Bailey* at ¶ 15. Our review shows that appellant testified that a landscaping business had always taken place on his land and this use was never abandoned. Appellee introduced evidence that appellant voluntarily discontinued these uses. While the evidence was disputed and conflicting, the trial court, as the finder of fact, found that appellant did not meet his burden of establishing a nonconforming use. The weight given to the evidence, as well as the credibility of the witnesses, are issues determined by the finder of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *Mayle v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-541, 2010-Ohio-2774, ¶ 32. Our review shows that the trial court did not abuse its discretion in finding that appellant had not proven a prior nonconforming use.

{¶ 25} In addition, whether appellant enjoys nonconforming use status under the zoning ordinance is not relevant as to whether he violated CCC 707.03(A). CCC 707.03 is not a zoning ordinance and appellant was not cited for violating the zoning code. Regulations protecting the health, safety and welfare of the public, such as the HSS Code,

may be enforced against preexisting, nonconforming uses. *C.D.S., Inc. v. Gates Mills*, 26 Ohio St.3d 166, 169 (1986); *N. Ohio Sign Contractors Assn. v. Lakewood*, 32 Ohio St.3d 316, 319 (1987). As such, appellant's third assignment of error is overruled.

## VI. ASSIGNMENT OF ERROR TWO–SOLID WASTE

{¶ 26} Appellant was charged with improperly storing solid waste on his land, in violation of CCC 707.03(A). According to the complaint, on or about the 2nd day of July 2015, appellant stored solid waste, debris, and rubbish at the property. The solid waste in question involves a large pile of granite which appellant claims to offer for sale to customers for landscaping projects.

{¶ 27} Appellant argues that the granite pile on the property was not solid waste, demolition debris or construction debris as those terms are ambiguously defined in the CCC. In addition, he argued that in defining ambiguous terms, the trial court must keep in mind the common law rule of lenity that has been codified at R.C. 2901.04(A).

{¶ 28} Appellant was convicted of CCC 707.03(A) which provides, in pertinent part:

> Every owner or person having charge of a * * * premises shall store and dispose of all garbage, rubbish, debris or solid waste from those parts of the premises that he or she controls in a clean, sanitary, and safe manner. No owner or person having charge of a * * * premises shall store or dispose of garbage, rubbish, debris or solid waste by placing said solid waste in or on any land or premises in the city.

"Premises" means land. CCC 703.17. The definition of "solid waste" in CCC 703.20 applies "in the interpretation and enforcement of [the] Health, Sanitation and Safety Code." CCC 703.01(A). The HSS Code defines "solid waste" as "residual solid or semi-solid material as results from industrial, commercial, agricultural or residential operations, including but not limited to * * * rubbish, * * * construction debris, demolition debris, * * * bottles, * * * and all other nauseous or offensive materials resulting from human habitation or business or manufacturing enterprises." CCC 703.20. *See also* CCC 701.01.

{¶ 29} The trial court found that:

> The material at issue in this case involves pieces of granite countertops that have been broken into pieces of all shapes and sizes. Many of the granite pieces contained adhesive on one side leftover from its prior use as countertops. The pieces

were polished and some still contain cut-outs where kitchen sinks would be placed. The large granite piles also contain other pieces of trash and debris, and grass and weeds are starting to grow around parts of the pile. (See "Plaintiff's Exhibit" H, J, K, L, and O).

The Court finds that the piles of granite at issue in this case are rubbish, construction debris, and demolition debris as contemplated under the definition of "solid waste" in C.C.C. 703.20.

Such piles of solid waste has also resulted in the Defendant's property becoming an ongoing attractive nuisance for illegal dumping. Evidence presented at trial showed frequent incidents of junk, trash, and debris being dumped throughout the Defendant's property. The ragged and poorly kept condition of the granite piles being kept by Defendant on his property leads to the impression that 5030 Westerville Rd. is a dumping ground for all.

(Decision and Entry at 3-4.)

{¶ 30} We agree with the trial court. The trial court properly found that the piles of granite at issue were "rubbish" under the definitions of solid waste. (Decision and Entry at 3.) Rubbish is defined as "combustible and noncombustible waste materials including such items as * * * mineral matter." CCC 703.19. The broken granite countertop pieces are rubbish because they are noncombustible waste materials. Officer Kirker testified that the granite countertops contain mineral matter and stone.

{¶ 31} Likewise, the trial court properly found that the piles of granite were construction debris and demolition debris under the definition of solid waste. Debris is defined as "the scattered remains of something or the ruins of something." CCC 703.05. Materials from construction or demolition operations are defined to "include but not be limited to such materials as * * * stone." CCC 703.14.

{¶ 32} In this case, the granite countertop pieces are construction and/or demolition debris because they are the ruins of stone material. Officer Kirker testified that the granite countertop is comprised of mineral matter and stone. Appellant testified that granite is a stone. Officer Kirker testified that the granite countertop pieces with adhesive on the back are construction debris because they were, at one time, used in a construction

project or were remnants from a construction project. They are also demolition debris because they are broken and discarded.

{¶ 33} In the criminal context, the rule of lenity provides that statutes defining offenses shall be strictly construed against the city and liberally construed in favor of the accused. R.C. 2901.04(A). The "touchstone" of the rule of lenity is "statutory ambiguity." *Columbus v. Mitchell*, 10th Dist. No. 16AP-322, 2016-Ohio-7873, ¶ 6. If a statute is not ambiguous, the rule of lenity does not apply. *Id.* Ambiguity exists only if the language of a statute is susceptible of more than one reasonable interpretation. *Id.* In this case, we find that CCC 703.20 and 707.01, which define solid waste, are not ambiguous.

{¶ 34} As such, we find that there was competent, credible evidence for the trial court to find that the granite pieces were solid waste and, as stated above, were not allowable as a nonconforming use. Whether or not the solid waste can be reused, CCC 707.03(A) requires a person to store solid waste in a clean, sanitary, and safe manner and prohibits solid waste from being stored on land, i.e., the ground. Appellant's second assignment of error is overruled.

## VII. ASSIGNMENT OF ERROR FOUR–SELECTIVE ENFORCEMENT

{¶ 35} Appellant alleges that appellee has engaged in unconstitutional selective enforcement. Appellant alleges that, in 1976, he granted appellee an easement through a portion of the property. Appellant claims that appellee is required to maintain the easement. Appellant alleges that the easement, which is now the Alum Creek bicycle trail, has weeds over 12 inches tall. Appellant argues that his prosecution for having high weeds and grass was the result of discriminatory, selective enforcement because the Alum Creek bicycle trail adjacent to his property also had the same violations but the ordinance was not enforced against appellee.

{¶ 36} In addition, appellant testified that on December 19, 2014, Officer Kirker, Paul Freedman from appellee's zoning department, and another individual came to his office and wanted to inspect his property. Appellant claimed that Freedman stated that he was going to "put [appellant] out of business" after appellant advised him that the use of his property was a lawful nonconforming use. (Tr. at 277.) Appellant's employee corroborated his claim. In contrast, Freedman denied telling appellant that he was going to shut down his operation, and Officer Kirker corroborated his testimony. The trial court

did not address this factual issue or the selective enforcement argument in the decision and entry.

{¶ 37} Appellee argues that the appellant waived the issue of selective enforcement because he failed to raise it prior to trial. Appellant responds that it was proper to raise the issue at trial because it was tried solely to the trial judge. In light of our finding that appellant's selective enforcement argument lacks merit, we decline to address the issue of waiver.

{¶ 38} The Supreme Court of Ohio articulated a two-part test for establishing a prima facie claim of selective prosecution in *State v. Flynt*, 63 Ohio St.2d 132, 134 (1980):

> "To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights."

*Id.*, quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974).

{¶ 39} Appellant relies on the case of *Cleveland v. Trzebuckowski*, 85 Ohio St.3d 524 (1999). In *Trzebuckowski,* a Cleveland police officer issued 5 complaints against the owner of a private for-profit pool hall for allowing a juvenile under the age of 14 not accompanied by either a parent or his legal guardian in his billiard room, a violation of Cleveland Codified Ordinance 688.13. By contrast, minors under the age of 14 and unaccompanied by either parent or his legal guardian were allowed in pool halls owned by the city of Cleveland. Trzebuckowski argues that the ordinance violated his right to equal protection.

{¶ 40} The city of Cleveland did not contest Trzebuckowski's factual assertions and readily conceded and justified its policy by arguing that an adult-oriented facility is likely to have alcohol and other corrupting influences, while the city's pool halls or recreation centers do not. However, in this case, Trzebuckowski testified, and the city does not contest, that his billiard room does not serve alcohol and is otherwise oriented towards teenagers. The court found that "[t]he city therefore has conceded the intentional

discrimination, and since it did not present evidence to the contrary, defendant has met his burden of showing that others situated similarly to him have not generally been proceeded against because of the same or similar conduct." *Trzebuckowski* at 532.

{¶ 41} We find *Trzebuckowski* to be inapplicable to the present case. In *Trzebuckowski,* both the defendant and the city were operating pool halls that were not serving alcohol and were oriented toward teenagers. In the present case, appellee is operating a public bikeway and appellant is a private landowner. Appellant was charged with violating CCC 709.03(B) for permitting grass and noxious weeds exceeding 12 inches in height to grow throughout his property. The violation was brought to the city's attention after a citizen complained to a code enforcement officer that appellant had high weeds, grass, and solid waste on his property. Appellant has produced no evidence to show that he has been "singled out for prosecution." In addition, appellant presented no evidence that the Alum Creek bicycle trail was the subject of a citizen complaint for high weeds and grass, or solid waste, on which the city thereafter failed to respond. As such, we do not find that appellant and appellee are similarly situated. Appellant has not provided any evidence that the prosecutor failed to prosecute other similarly situated individuals for identical conduct. *See State v. Moses*, 10th Dist. No. 13AP-816, 2014-Ohio-1748, ¶ 16.

{¶ 42} Even assuming appellant satisfied the first prong of *Flynt,* his selective prosecution claim fails because he cannot satisfy the second prong. Appellant cannot meet his heavy burden of showing that his prosecution was invidious or in bad faith, i.e., based on impermissible considerations such as race, religion, or the desire to prevent his exercise of constitutional rights. *See Flynt* at 134.

{¶ 43} Appellant claims invidious prosecution, but provides no evidence of bad faith motivation. Even if appellant's version of the events is believed and Freedman did threaten to put him out of business, at most it would show that the motivation was based on a disagreement regarding the scope of lawful nonconforming use, and provides no evidence that the prosecution was based on the impermissible considerations of race, religion, or the desire to prevent his exercise of constitutional rights.

{¶ 44} Appellant fails to meet the two-part test for establishing a prima facie claim for selective prosecution. Appellant's fourth assignment of error is overruled.

**VIII. DISPOSITION**

{¶ 45} Having overruled appellant's four assignments of error, we affirm the judgment of the Franklin County Municipal Court, Environmental Division.

*Judgment affirmed.*

BROWN, P.J., concurs.
LUPER SCHUSTER, J., concurs in judgment only.

———————————