[Cite as *Cleveland v. Hall*, 2018-Ohio-2198.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106134**

## CITY OF EAST CLEVELAND

PLAINTIFF-APPELLEE

vs.

## TONJA M. HALL

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED; VACATED

Criminal Appeal from the
East Cleveland Municipal Court
Case No. 17-CRB-00570

**BEFORE:** E.A. Gallagher, A.J., Kilbane, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** June 7, 2018

[Cite as *Cleveland v. Hall*, 2018-Ohio-2198.]

**APPELLANT**

Tonja M. Hall, pro se
10915 Churchill Avenue
Cleveland, Ohio 44106


**ATTORNEY FOR APPELLEE**

Willa M. Hemmons
Law Director
City of East Cleveland
14340 Euclid Avenue
East Cleveland, Ohio 44112

EILEEN A. GALLAGHER, A.J.:

{¶1} Defendant-appellant Tonja Hall, pro se, appeals her conviction for criminal simulation on sufficiency of the evidence and manifest weight grounds. For the reasons that follow, we reverse the trial court's judgment and vacate her conviction.

**Factual and Procedural Background**

{¶2} On May 16, 2017, a complaint was filed in the East Cleveland Municipal Court charging Hall with one count of criminal simulation in violation of section 545.13 of the Codified Ordinances of East Cleveland, General Offenses Code ("E.C.C.O.") arising out of her attempt to cash a fraudulent check. The preceding day, Hall had gone to PLS Financial Services ("PLS"), a checking cashing business in East Cleveland, and presented a check in the amount of $30,787.50 for cashing. The check was dated May 8, 2017. Designer Hardware & Plumbing L.L.C. d.b.a. Designer Hardware by Faye ("Designer Hardware & Plumbing") in Oklahoma City, Oklahoma was the drawer of the check. The purported payee was "[a]ttention: Tonja Maria Hall" with an address on Cedar Avenue in Cleveland, Ohio. The complaint alleged that, on or about May 15, 2017, Hall "with purpose to defraud, uttered or possessed with the purpose to utter, a check in the amount of $30,787.50, knowing it to have been simulated when presented to PLS Check Cashiers * * *."

{¶3} A bench trial was held on July 13, 2017. The city presented testimony from Ebony Sims, the assistant manager of PLS, who received the check Hall presented for cashing and Officer Westfield, the arresting officer. The city also introduced the allegedly altered check.

{¶4} Sims testified that when Hall presented the check, she immediately suspected that the check was fraudulent. Sims testified that she had seen similar altered checks in the past and

that, in this case, she could see on the face of the check "where the name part had been erased and also the amount and the date" and then "type[d] over * * * with a typewriter of some sort." Sims testified that, as was her practice when she was presented with a check she believed could be fraudulent, she "called the company to verify." She testified that, after speaking with someone in the accounting department at Designer Hardware & Plumbing, she learned that the check had been issued in April 2017 to a different company "for like $130–something." Sims stated that she informed Hall that the check was fraudulent and that she could not return the check to her and then called the police.

{¶5} Officer Westfield was the responding officer. He testified that when he arrived at the business, Sims informed him that Hall had attempted to cash a fraudulent check and she showed him said check. Officer Westfield examined the check and testified that, based on his experience, the amount, address and name on the check appeared to have been altered. He testified that he asked Hall about the check but that she refused to talk to him, so he called his supervisor. Officer Westfield testified that his supervisor directed him to arrest Hall and that he did so.

{¶6} Hall, who appeared pro se, was the sole witness to testify in her defense. Hall claimed that she was an independent contractor for Kunlun Energy Co. Ltd. ("Kunlun Energy") based in Hong Kong and that she had received the check on its behalf. Hall testified that, pursuant to the terms of her contract with Kunlun Energy, she was to receive a monthly salary of $4,900 plus a 6.5% commission for receiving and processing payments from Kunlun Energy's debtors in the United States and Canada. She testified that all of the communications related to

her work for Kunlun Energy were conducted by email and telephone and that she did not know anyone from Designer Hardware & Plumbing.

{¶7} Hall introduced a copy of the contract and portions of email communications[1] involving Hall, Sun Patrick (identified as the "executive director" of Kunlun Energy) and Donald Tendani (an unidentified third party) allegedly relating to the check at issue. The contract between the parties was dated April 3, 2017, and was for a term of six months, subject to termination upon seven days written notice. Hall testified that the check at issue was from "one of the debtors" of Kunlun Energy or "the debtor of one of the clients" of Kunlun Energy, that she had received the check on behalf Kunlun Energy and that under the terms of the contract, she was to "process" the check, keep 6.5% of the funds she received as commission and then remit the balance of the funds to Kunlun Energy. Hall stated that she had her own bank account into which she could have deposited the check but she did not explain why she failed to do so.

{¶8} After considering the evidence and arguments of the parties, the trial court found Hall guilty of criminal simulation in violation of E.C.C.O. 545.13, sentenced her to 180 days in jail and imposed a $500 fine. The trial court stayed the sentence pending Hall's appeal.

{¶9} Hall appealed her conviction, raising the following assignment of error for review:

ASSIGNMENT OF ERROR: Did the trial court commit error convicting defendant of [c]riminal simulation, R.C. statute 2913.32(A)(4) [sic] and applying plaintiff's manifest weight of the evidence. [2]

---

[1]The email chain does not appear to be complete and portions of the text of the email chain are cut off in the copy of the exhibit filed with the trial court.

[2] Although Hall refers to R.C. 2913.32(A)(4) in her assignment of error, she was actually convicted of violating E.C.C.O. 545.13.

**Law and Analysis**

**{¶10}** In her sole assignment of error, Hall argues that her conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

**{¶11}** A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1977). When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at 387; *Jenks* at paragraph two of the syllabus.

**{¶12}** A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "thirteenth juror" and may disagree "with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S.

31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶13} Hall was convicted of one count of criminal simulation under E.C.C.O. 545.13. E.C.C.O. 545.13 provides, in relevant part:

> (a) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
>
> (1) Make or alter any object so that it appears to have value because of antiquity, rarity, curiosity, source, or authorship, which it does not in fact possess;
>
> * * *
>
> (4) Utter, or possess with purpose to utter, any object that the person knows to have been simulated as provided in subsection (a)(1) * * * of this section.
>
> (b) Whoever violates this section is guilty of criminal simulation, a misdemeanor of the first degree. * * * [3]

---

[3] "Defraud" is defined as "to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." E.C.C.O. 545.01(b). "Deception" is defined as "knowingly deceiving another or causing another to be deceived, by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act or omission that creates, confirms or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." E.C.C.O. 545.01(a). "Utter" is defined as "to issue, publish, transfer, use, put or send into circulation, deliver or display." E.C.C.O. 545.01(h).

**{¶14}** This case turns on the interpretation of E.C.C.O. 545.13 — specifically, the meaning of the phrase "[m]ake or alter any object so that it appears to have value because of * * * source, or authorship, which it does not in fact possess." The interpretation of an ordinance and the application of an ordinance to the facts are questions of law that we review de novo. *See, e.g., State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 6; *State v. Chapman*, 4th Dist. Gallia No. 14CA8, 2015-Ohio-902, ¶ 9; *Brobst v. Lyndhurst,* 8th Dist. Cuyahoga No. 105849, 2018-Ohio-1518, ¶ 16, citing *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 25.

**{¶15}** Hall argues that the trial court erred in convicting her of criminal simulation because the offense "does not apply to a bad check." The city argues that Hall was properly convicted of criminal simulation because the city presented evidence that she presented a check for cashing — an "'object' * * * predicated upon [a] writing" — that had been "alter[ed]" as to "source" and "authorship" to make it appear as if it had value it otherwise would not have had.

**{¶16}** In reviewing an ordinance, we apply the same rules we apply when reviewing a statute. We give the words their plain, ordinary and customary meaning. *See, e.g., Brobst v. Lyndhurst*, 2018-Ohio-1518, ¶ 16, citing *Bosher v. Euclid Income Tax Bd. of Rev.*, 99 Ohio St.3d 330, 2003-Ohio-3886, 792 N.E.2d 181, ¶ 14; *Cleveland v. Go Invest Wisely, LLC*, 8th Dist. Cuyahoga No. 95529, 2011-Ohio-3242, ¶ 9. We give effect to all of the words used and may not "'restrict, constrict, qualify, narrow, enlarge or abridge'" the plain language of the ordinance. *Sivit v. Village Green of Beachwood, L.P.*, 2016-Ohio-2940, 65 N.E.3d 163, ¶ 28 (8th Dist.), quoting *State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.*, 131 Ohio St.3d 478,

2012-Ohio-1484, 967 N.E.2d 193, ¶ 18; *see also Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 53-54, 524 N.E.2d 441 (1988). If the plain language of the ordinance conveys a clear, unequivocal and definite meaning, we apply the language as stated without interpretation or construction. *See, e.g., Georgetown of the Highlands v. Cleveland Div. of Water*, 2016-Ohio-8039, 75 N.E.3d 794, ¶ 21 (8th Dist.), citing *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 1996-Ohio-291, 660 N.E.2d 463; *Cleveland v. Elkins*, 8th Dist. Cuyahoga No. 91378, 2008-Ohio-6288, ¶ 19. If, however, an ordinance is ambiguous, i.e., if the language of the ordinance is susceptible to more than one reasonable interpretation, we must apply rules of construction to interpret the ordinance. *See, e.g., Georgetown of the Highlands* at ¶ 21; *Columbus v. Reiner*, 10th Dist. Franklin No. 16AP-513, 2018-Ohio-975, ¶ 33.

{¶17} The terms "object," "source" and "authorship" are not defined in the ordinance. *Webster's Third New International Dictionary* defines "object," in relevant part, as "a discrete or visible or tangible thing." *Webster's Third New International Dictionary* 1555 (1993); *see also Black's Law Dictionary* 1240 (10th Ed.2014) (defining "object," in relevant part, as "[a] person or thing to which thought, feeling, or action is directed"). "[S]ource" is defined, in relevant part, as "the point of origin of," "a generative force or stimulus" or "point of origin or procurement." *Webster's* at 2177; *see also Black's Law Dictionary* at 1610 (defining "source" as "[t]he originator or primary agent of an act, circumstance, or result"). "[A]uthorship" is defined, in relevant part, as "the origin of a literary production" and "the state or act of creating." *Webster's* at 147; *see also Black's Law Dictionary* at 160 (defining "authorship," in relevant part, as "[t]he fact of having written a particular book or document").

**{¶18}** After a thorough review of the ordinance and applying the plain, ordinary and customary meanings to the words used, we find that Hall's and the state's interpretations are both reasonable and that the ordinance is ambiguous as to whether a check that has been altered in the manner in which the check was altered in this case falls within the scope of the ordinance. We, therefore, apply principles of statutory construction to interpret the ordinance.

**{¶19}** Ordinances defining offenses or penalties must be strictly construed against the city and liberally construed in favor of the defendant. *See, e.g., Go Invest Wisely*, 2011-Ohio-3242, at ¶ 9; *Cleveland v. Pugh*, 110 Ohio App.3d 472, 474, 674 N.E.2d 759 (8th Dist.); *see also* E.C.C.O. 501.04(a). E.C.C.O. 101.07(c) further provides:

> If an ordinance is ambiguous, the court, in determining the intention of Council, may consider among other matters:
>
> (1)    The object sought to be attained;
>
> (2)    The circumstances under which the ordinance was enacted;
>
> (3)    The legislative history;
>
> (4)    The common law or former legislative provisions, including laws upon the same or similar subjects;
>
> (5)    The consequences of a particular construction;
>
> (6)    The administrative construction of the ordinance.[4]

**{¶20}** Applying these considerations and construing the ordinance strictly against the city and liberally in favor of Hall, we find that altering the payee and amount of a check does not constitute "alter[ation]" of the "source" or "authorship" of an "object" within the meaning of

---

[4] E.C.C.O. 101.07(c) mirrors the language of the statutory rules of construction in R.C. 1.49.

E.C.C.O. 545.13 and that, therefore, there was insufficient evidence to support Hall's conviction for criminal simulation.

{¶21} E.C.C.O. 545.13(a) is nearly identical to Ohio's criminal simulation statute, R.C. 2913.32(A). The Committee Comment to R.C. 2913.32 states:

> This section is designed to prohibit forgery where the subject of the offense is not a writing but an object. Among other things, the section prohibits the increasingly common practices of simulating antique furniture, or of counterfeiting phonograph records.

R.C. 2913.32, 1974 Committee Comment to H 511.

{¶22} Thus, it appears that the criminal simulation statute was intended to fill a gap left by the forgery statute, which applies to "forgery" of "writings," *see* R.C. 2913.31, by extending the prohibition against forgery to "objects." *See, e.g., State v. Joseph*, 7th Dist. Mahoning No. 00 CA 218, 2002-Ohio-3009, ¶ 29 ("The criminal simulation statute was enacted in part to prohibit the production of counterfeit merchandise.").

{¶23} The Second District considered a similar issue in *State v. Primous,* 164 Ohio App.3d 26, 2005-Ohio-5586, 840 N.E.2d 1142 (2d Dist.). In *Primous*, the defendant was charged with one count of passing a bad check in violation of R.C. 2913.11 and one count of criminal simulation in violation of R.C. 2913.32 based on a personal check the defendant had presented to a retail store. *Id.* at ¶ 1. The defendant pled guilty to the passing bad check charge and no contest to the criminal simulation charge. *Id.* at ¶ 2. On appeal, the defendant argued that he was not properly convicted of criminal simulation because "passing a bad check does not fit under the ambit of criminal simulation." *Id.* at ¶ 16. The Second District agreed. The Second District held that the Committee Comment to R.C. 2913.32 "makes it quite clear that

the section applies to forging objects and not a writing, such as forging antiques or phonograph records." *Id.*

{¶24} This case is, in certain respects, factually distinguishable from *Primous*. In *Primous*, the conduct at issue was "passing a bad check." Passing a bad check is different from what occurred here. Passing a bad check occurs when a check is drawn on a nonexistent account or on an account with insufficient funds to honor the check when presented. *See* R.C. 2913.11. In this case, the check at issue was from an existing account. There was no evidence that there were insufficient funds in the account to honor the check. Rather, the original payee and the amount of the check had had been erased and replaced to make it appear as if the check was a check payable to Hall in the amount of $30,787.50 when it was actually a check payable to an unidentified company "for like $130–something." Nevertheless, we find the reasoning of the court in *Primous* persuasive. *See also State v. Rea*, 145 Ariz. 298, 300, 701 P.2d 6 (Ariz.App.1985) ("[T]he criminal simulation statute was designed to address 'the problems of forged art treasures or the sale of faked antiques or rare natural objects.' Given that history, we hold that 'object' * * * does not include 'written instrument.'"), quoting Report of the Arizona Criminal Code Commission 196 (1975).

{¶25} The city argues that we should ignore *Primous* and instead follow *Cleveland v. Brown*, 8th Dist. Cuyahoga No. 96964, 2012-Ohio-702. In *Brown*, this court held that evidence supported defendant's conviction for criminal simulation under R.C. 2913.12 where counterfeit bills, which were "immediately recognizable as counterfeit," were found in defendant's possession at a club. *Id.* at ¶ 9-18. In that case, no issue was raised regarding whether the counterfeit bills constituted "objects" that had been "made" or "alter[ed]" so that they

"appear[ed] to have value because of antiquity, rarity, curiosity, source, or authorship, which [they did] not in fact possess." The issue in *Brown* was whether there was sufficient evidence that the defendant had the requisite knowledge or intent to support his conviction under R.C. 2913.12 based on the fact that he possessed counterfeit bills. *Id.* at ¶ 14-18. This court affirmed his conviction, reasoning that given that the defendant had no legitimate currency to pay for any goods or services he would acquire that night as a patron of the club, but only counterfeit bills, a reasonable person could infer that he had tendered or intended to tender the counterfeit bills in exchange for goods and services and, therefore, had intent to defraud or acted knowingly. *Id.* at ¶ 16-18.

{¶26} Furthermore, cases involving counterfeit currency are distinguishable in that they involve a tangible object, i.e., currency, that appears to have value specifically because of its purported "source," i.e., because it appears to be legal currency issued by the United States government rather than the counterfeit "paper money" it actually is. *See also State v. Fry*, 6th Dist. Sandusky No. S-93-3 n, 1993 Ohio App. LEXIS 5527, *9-14 (Nov. 19, 1993) (evidence was sufficient to support conviction for criminal simulation where defendant participated in a scheme to pass simulated $100 bills at bar); *State v. Lantz*, 4th Dist. Vinton No. 475, 1992 Ohio App. LEXIS 3117, *18-22 (June 10, 1992) (sufficient evidence existed to support conviction for criminal simulation where defendant paid $50 for a counterfeit $100 bill, which was circumstantial evidence that he intended to utter it later). In this case, there was no evidence that the name or signature of the drawer of the check was altered or that any information related to the payor bank or account on which the check was drawn was altered.

{¶27} We need not decide in this case whether an alteration of a check could never support a conviction for criminal simulation under E.C.C.O. 545.13(a) or R.C. 2913.12(A). *Compare State v. Sweet*, Tenn. App. No. E2010-00728-CCA-R3-CD, 2011 Tenn. Crim. App. LEXIS 923, *3-4, 96, 118-119 (Dec. 16, 2011) (defendant committed act of criminal simulation when he altered check to appear to be from the account of "Mr. Jamie Turpin" rather than "Ms. Jamie Turpin"); *State v. Baggett*, Tenn. App. No. W2008-00618-CCA-R3-CD, 2008 Tenn. Crim. App. LEXIS 945, *8-9 (Dec. 8, 2008) (evidence was sufficient to convict defendant of criminal simulation where defendant presented a check made payable to him, signed with the name of a fictitious person, that was drawn on a bank that had ceased operations by the listed name five years earlier).

{¶28} For purposes of resolving this appeal, we hold only that altering a check to erase and replace the payee and amount of the check does not constitute "alter[ation]" of the "source" or "authorship" of an "object" within the meaning of E.C.C.O. 545.13(a) and that, therefore, there was insufficient evidence to support Hall's conviction for criminal simulation under that provision.

{¶29} Because we find that Hall's conviction was not supported by sufficient evidence, Hall's argument that her conviction was against the manifest weight of the evidence is moot. Hall's assignment of error is sustained in part.

{¶30} Judgment reversed; conviction vacated.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the East Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

MARY EILEEN KILBANE, J., and
PATRICIA A. BLACKMON, J., CONCUR